PEOPLE v MORALES

Docket No. 211296. Submitted November 2, 1999, at Lansing. Decided
April 21, 2000, at 9:10 A.M. Leave to appeal denied, 463 Mich ____.

Carlos H. Morales was charged in the Clinton Circuit Court with
absconding or forfeiting bond. Within twenty-one days of filing the
information, the prosecution gave notice of its intent to seek
enhancement of any sentence on the basis that the defendant
would, upon conviction, be an habitual offender, second offense.
More than twenty-one days after charging the defendant with
absconding or forfeiting bond, the prosecution gave further notices
of intent to seek enhancement of the defendant's sentence as a
third-offense habitual offender and as a fourth-offense habitual
offender. The defendant was convicted by a jury of absconding or
forfeiting bond, and was sentenced by the court, Randy L.
Tahvonen, J., as a fourth-offense habitual offender. The defendant
appealed, claiming that sentencing as a fourth-offense habitual
offender was improper because the notice of intent to seek such
sentence enhancement was not timely.

The Court of Appeals *held*:

1. MCL 769.13; MSA 28.1085 states that notice of intent to seek
enhancement shall be filed with the court and served on the
defendant or the defendant's attorney within twenty-one days after
arraignment on the information charging the underlying offense or,
if arraignment is waived, within twenty-one days of the filing of the
information charging the underlying offense. Section 13 does not
include any exception for the sort of undiscovered out-of-state
prior convictions involved in this case, and no such exception can
be read into the statute.

2. No merit lies in the defendant's claim that he was denied effec-
tive assistance of counsel at trial on the basis of counsel's conces-
sion of the defendant's guilt during opening and closing arguments.
The defendant failed to establish that a reasonable probability
exists that the outcome of the trial would have been different had
the remarks not been made.

Conviction affirmed; fourth-offense habitual offender sentence
reversed; case remanded for resentencing as second-offense habit-
ual offender.

Sentences — Habitual Offenders — Prosecution Notices to Seek Sentence
    Enhancement.
    A prosecutor's notice of intent to seek an habitual offender sentence
    for a defendant must be filed with the court and served on the
    defendant or the defendant's attorney within twenty-one days after
    arraignment on the information charging the underlying offense or,
    if arraignment is waived, within twenty-one days of the filing of the
    information charging the underlying offense (MCL 769.13; MSA
    28.1085).

*Jennifer M. Granholm*, Attorney General, *Thomas
L. Casey*, Solicitor General, and *Charles D. Sherman*,
Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*), for the
defendant on appeal.

Before: HOLBROOK, JR., P.J., and SMOLENSKI and
COLLINS, JJ.

PER CURIAM. Defendant appeals as of right from his
jury trial conviction of absconding or forfeiting bond,
MCL 750.199a; MSA 28.396(1). Defendant was sen-
tenced as an habitual offender, fourth offense, MCL
769.12; MSA 20.1084, to a prison term of five to fifteen
years. We affirm in part, reverse in part, and remand
for resentencing.

I

On February 20, 1997, defendant was arrested and
charged with first-degree criminal sexual conduct
(CSC I)[1] and possession of a firearm during the com-
mission of a felony (felony-firearm.)[2] Defendant was
released from jail two days later after posting a
$20,000 bond. Defendant appeared at his March 6,

---

[1] MCL 750.520b(1)(e);  MSA 28.788(2)(1)(e).

[2] MCL 750.227b; MSA 28.424(2).

1997, preliminary examination, but failed to appear at a scheduled April 28, 1997, motion hearing. In mid-April, defendant informed his girlfriend that he had fled to Arizona. Then in May 1997, the police received an anonymous tip regarding defendant's whereabouts. Defendant was arrested in Arizona on May 19, 1997, and was subsequently returned to Michigan.[3]

The absconding and forfeiting felony information was filed with the clerk on November 19, 1997. On December 10, 1997, the prosecution filed a supplemental information charging defendant with being an habitual offender, second offense. MCL 760.10; MSA 28.1082. The prior felony conviction set forth was a 1982 conviction in the state of Arizona.[4] Then on February 11, 1998, the prosecution filed a motion to amend the supplemental information to charge defendant with being an habitual offender, third offense. MCL 769.11; MSA 28.1083. The additional felony conviction uncovered by the prosecution was a 1987 conviction in the state of Ohio.[5]

At the hearing on the motion to amend, instead of charging defendant with being a third-offense habitual offender, the prosecutor sought to amend the supplemental information to charge defendant with being an habitual offender, fourth offense. The third prior felony conviction—apparently uncovered after the motion was filed—was a 1994 conviction also in the

---

[3] Although the record indicates that defendant was found not guilty of CSC I, it does not specifically indicate how the felony-firearm charge was resolved. Finding no mention of any such conviction in the record, we assume that defendant was also found not guilty of this charge.

[4] The record indicates the 1982 conviction was for criminal trespass.

[5] The record indicates the 1987 conviction was for breaking and entering.

state of Arizona.[6] The prosecutor argued to the trial court that the strict twenty-one-day time limit found in MCL 769.13; MSA 28.1085 need not be adhered to because of the difficulty in obtaining records of defendant's out-of-state convictions. Further, the prosecutor noted that the 1982 Ohio conviction was listed under the name Luis Rodriguez, with the name Carlos Hernandez listed as an alias. In support of his motion, the prosecutor cited the case of *People v Hendrick*, 398 Mich 410; 247 NW2d 840 (1976). The trial court granted the prosecutor's motion stating:

> I find good cause for the late amendment, in that, first, that these were convictions in more than one state; and second, it would appear that various names and aliases were used by the offender in connection with these convictions.

II

Defendant argues that the amendment of the supplemental information was untimely because it violated the twenty-one-day rule set forth in MCL 769.13; MSA 28.1085. We agree. Section 13 reads in pertinent part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

---

[6] The record indicates the 1994 conviction was for aggravated assault.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time period provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Resolution of this appeal requires us to interpret the above statutory language. Issues of statutory interpretation are reviewed de novo on appeal. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). "The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent. The starting place for the search for intent is the language used in the statute." *Bio-Magnetic Resonance, Inc v Dep't of Public Health*, 234 Mich App 225, 229; 593 NW2d 641 (1999) (citations omitted).

A

As this Court has acknowledged, § 13 erects "a bright-line test for determining whether a prosecutor has filed a supplemental information 'promptly.' " *People v Ellis*, 224 Mich App 752, 755; 569 NW2d 917 (1997). Accord *People v Bollinger*, 224 Mich App 491, 492; 569 NW2d 646 (1997). Section 13 specifically states that a notice of intent to seek sentence enhancement "*shall* be filed with the court and served upon the defendant or his or her attorney within the" twenty-one-day time limit. (Emphasis added.) "We

presume that the Legislature intended the meaning plainly expressed in the language used . . . ." *People v Reynolds*, 240 Mich App 250, 253; 611 NW2d 316 (2000). Section 13 does not include any exception for undiscovered out-of-state convictions, and we do not believe it is within our purview to read such an exception into the statute when the Legislature has chosen not to include it. *Id.*

B

Furthermore, we find support for a strict application of the twenty-one-day rule by reading the language of § 13 in light of case law that developed interpreting the pre-1994 version of the statute. Before the 1994 amendment, 1994 PA 110, § 13 read in pertinent part:

> If after conviction and either before or after sentence it appears that a person convicted of a felony has previously been convicted of crimes as set forth in section 10, 11, or 12, the prosecuting attorney of the county in which the conviction was had may file a separate or supplemental information in the cause accusing the person of the previous convictions. The court in which the conviction was had shall cause the person to be brought before it and shall inform him of the allegations contained in the information, and of his right to be tried on the allegations, and require the offender to say whether he is the same person as charged in the information or not. If the offender says he is not the same person, or remains silent, the court shall enter a plea of not guilty, and a jury of 12 jurors shall be impaneled from the petit jurors serving at the then or following term of court to determine the issues raised by the information and the plea. The accused may waive trial by jury in the manner provided by this act. The usual practice in the trial of criminal actions shall be followed . . . .

Under the prior statutory scheme, a rather complex body of case law developed addressing the question of when a prosecutor could proceed to charge a defendant as an habitual offender under the Code of Criminal Procedure. We begin our examination of this case law by turning to *People v Hatt*, 384 Mich 302; 181 NW2d 912 (1970). In *Hatt*, the Court was asked whether it was error to decide in a single, unitary trial the issues of defendant's guilt on the underlying offense and his status as an habitual offender. After reviewing prior case law, the *Hatt* Court stated that "[t]he procedures for dealing with a recidivistic charge, as delineated by Judge LEVIN in *People v Stratton* [13 Mich App 350; 164 NW2d 555 (1968)], are approved." *Id.* at 309.

In *Stratton*, then Judge LEVIN carefully analyzed the habitual offender sections of the Code of Criminal Procedure, focusing principally on §§ 12 and 13.[7] Judge LEVIN concluded that when read together, §§ 10, 11, 12, and 13

> contemplate[d] 2 separate situations and procedures to be followed when the prosecutor desires to make possible the meting out of an increased penalty pursuant to the habitual

---

[7] In pertinent part, § 12 read at the time: "A person to be punishable under this and the last 2 preceding sections need not have been indicted and convicted as a previous offender in order to receive the increased punishment therein provided, but may be proceeded against as provided in [§ 13]." In 1978, § 12 was rewritten. The above-quoted provision of the section was incorporated with minor stylistic changes into the then new subsection 12(3):

> A person to be punished under this section or section 10 or 11 need not have been indicted and convicted as a previous offender in order to receive the increased punishment provided in this section or section 11, but may be proceeded against as provided in section 13.

criminal sections of the code of criminal procedure. The procedure set forth in section 13 is to be followed whenever it appears to the prosecutor "*after* conviction" of the current charge that the felon has a prior felony record. However, where it appears to the prosecutor before conviction of the current charge that the accused person is a prior felon, the accused person is to be informed against as a prior offender prior to conviction on the current charge; the procedure set forth in section 13 need not be followed. [*Stratton, supra* at 356 (emphasis in original). Accord *In re Brazel*, 293 Mich 632, 639-640; 292 NW2d 664 (1940).]

Judge LEVIN then went on to note that when the prosecutor has knowledge of a defendant's status as an habitual offender, the requirements of due process are "ordinarily" not violated if (1) the habitual offender charge is raised in a supplemental information, which is kept from the jury until after it finds on the issue of the defendant's guilt on the current charge, and (2) trial on the habitual offender charge is held before the same jury that found the defendant guilty of the current charge. *Stratton, supra* at 357.

The contours of the law were further developed in *People v Marshall*, 41 Mich App 66; 199 NW2d 521 (1972). In that case, the defendant, who had killed his wife in 1961, was found incompetent to stand trial. After being held in custody for nine years, the defendant was eventually tried on a charge of first-degree murder. He was found guilty by a jury of the lesser included offense of manslaughter and was sentenced to 14½ to 15 years in prison, with credit for the nine years he was held in custody before trial. Four months later, approximately one month before the defendant was to be discharged from prison, the prosecutor filed a supplemental information charging the defendant with being an habitual offender, second

offense. The defendant was found guilty and was sentenced to serve 21 to 22½ years in prison. There was no question that the prosecutor had knowledge of the defendant's prior felony conviction well in advance of his manslaughter conviction. *Id.* at 67-68.

The *Marshall* Court held that a prosecutor has the discretion to file a supplemental information after conviction on the current charged offense even if the prosecutor had prior knowledge of the previous conviction. *Id.* at 72-73. Referring to *Stratton* and *In re Brazel*, the *Marshall* Court observed that the two cases

> specifically held that the language of § 13 does not preclude the prosecutor from filing a supplemental information prior to defendant's conviction on the current pending charge.
>
> The holding of *Brazel* and *Stratton* does not, however, make it mandatory on the part of the prosecutor to proceed against the accused as a subsequent offender prior to conviction, but is merely permissive in that it allows the prosecutor to so proceed.
>
> \*     \*     \*
>
> Clearly, the prosecutor has discretion to file a supplemental information under the habitual criminal act after conviction, and is not limited to filing such supplemental information prior to conviction of a current charge, where he has knowledge of the previous conviction. [*Id.* at 71-73.]

The *Marshall* Court then went on to observe that the ability to file a supplemental information after conviction applies not only when the prosecutor lacks knowledge of any prior conviction, but also where it is "totally unnecessary to act prior to conviction." *Id.* at 72. The Court concluded that the pending case fell squarely in the latter category, given that the defendant was facing a mandatory life sentence at trial on

the current offense. *Id.* After all, the court implied, a defendant benefits nothing from knowing that his sentence could be enhanced from life to 1½ times life. *Id.*

The *Marshall* Court also introduced the concept of "promptness" into the ever complicating body of case law. The Court observed that once the prosecutor knew that the defendant was not going to face a mandatory life sentence, "he should have acted promptly to file his supplemental information." *Id.* at 73. The Court held that if the defendant's rights are prejudiced by the delay in filing,[8] and no good cause exists for the delay, then delayed filing violates the defendant's due process rights. *Id.* at 74.

The concept of "good cause" for a delayed filing was further examined in *Hendrick, supra.* In that case, the prosecutor had filed a supplemental information on the same day the defendant was sentenced for his conviction of assault with intent to do great bodily harm less than murder.[9] However, one week before the defendant's trial, the prosecutor had received an FBI "rap sheet" indicating that the defendant had prior felony convictions in the states of Washington and North Dakota. *Hendrick, supra* at 414-415. In a narrow holding, the *Hendrick* Court concluded that the prosecutor had acted properly because " 'it would be foolish to rely solely upon a rap sheet for information.' " *Id.* at 421 (quoting the trial court).[10]

---

[8] The time for the defendant in *Marshall* to file an appeal on the manslaughter conviction had passed before the prosecutor filed the supplemental information. *Marshall, supra* at 73.

[9] MCL 750.84; MSA 28.279.

[10] Justice LEVIN dissented in *Hendrick, supra* at 421-428.

The direction of the case law was fundamentally altered by *People v Fountain*, 407 Mich 96; 282 NW2d 168 (1979). Citing *Hatt* and *Stratton*, the *Fountain* Court resurrected the knowledge/lack of knowledge distinction referred to in *Stratton*:

> A prosecutor who knows a person has a prior felony record must promptly proceed, if at all, against the person as an habitual offender. The prosecutor is not foreclosed from proceeding against a person as an habitual offender after conviction on the current offense *provided he is unaware of a prior felony record until after the conviction*. The only recognized exception to this rule is when the delay is due to the need to verify out-of-state felony convictions based on the "rap sheet." [*Id.* at 98-99 (emphasis added) (citations omitted).]

The significance of this change cannot be overstated. Before *Fountain*, the case law established that a prosecutor could, at his discretion, file a supplemental information after conviction on the current charge even if the prosecutor had prior knowledge of the prior conviction. *Marshall, supra.* The only limitation on after-filing was that it must be "prompt." The fundamentals of this approach were not altered by the narrow holding of *Hendrick.*

The new approach was further solidified in *People v Shelton*, 412 Mich 565; 315 NW2d 537 (1982). The defendant in *Shelton* had been convicted of breaking and entering with intent to commit larceny.[11] On the first day of trial, the prosecutor had filed an habitual offender supplemental information. *Id.* at 567. After reviewing *Fountain*, the *Shelton* Court went on to state:

---

[11] MCL 750.110; MSA 28.305.

The purpose of requiring a prosecutor to proceed "promptly" to file the supplemental information is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense. We conclude that a standard which would find a filing on the day of trial to suffice is an inadequate one. *We recognize that any "rule" which we might establish is subject to the criticism that it is arbitrary. However, we believe that the imposition of a "rule" is preferable to the ad hoc decision-making which has been the practice heretofore.*

Accordingly, we hold that a supplemental information is filed "promptly" if it is filed not more than 14 days after the defendant is arraigned in circuit court (or has waived arraignment) on the information charging the underlying felony, or before trial if the defendant is tried within that 14-day period. We believe that such a rule allows the prosecutor sufficient time to make a decision concerning supplementation while at the same time providing notice at an early stage of the proceedings to the defendant of the potential consequences of conviction of the underlying felony. [*Id.* at 569 (emphasis added).][12]

Thus, as of *Shelton*, the case law had established a two-track analysis based on the knowledge/lack of knowledge distinction. This approach was governed by the following rules: (1) if the prosecutor has knowledge of prior convictions, the prosecutor must act within 14 days of the defendant's arraignment (or waiver thereof) on the underlying charge, or within

---

[12] The approach followed by the Court in *Fountain* and *Shelton* reflects a change in the focus of the Court's due process concerns. Previously, the Court had been focusing on the issue whether a defendant's due process rights are violated when the defendant's prior felony record is put before a jury during the defendant's trial on the underlying charge. See, e.g., *Hatt, supra* at 309. In *Fountain* and *Shelton*, the Court's gaze was turned to an examination of whether the defendant receives proper notice of the consequences of conviction on the underlying charge. See, e.g., *Shelton, supra* at 569.

the time between arraignment (or waiver thereof) if the trial begins within 14 days; (2) the only exception to the first rule is when the delayed filing is due to the need to verify the out-of-state felony convictions listed on a rap sheet; (3) if the prosecutor lacks knowledge of the prior convictions until after conviction on the underlying charge, the prosecutor can file a supplemental information provided both that the filing is prompt and that the defendant is not unfairly prejudiced.

The landscape of the law was again fundamentally altered when the Legislature amended the habitual offender statutes in 1994. Under the current statutory scheme, the issue of defendant's status as an habitual offender is no longer a jury question. Now, the issue is to be resolved by the trial court either at sentencing or at a separate hearing held postconviction on the underlying charge. MCL 750.13; MSA 28.1085. Additionally, the prosecutor is no longer required to file a supplemental information. Instead, the prosecutor may file a written notice of intent to seek sentence enhancement. Further, the period in which written notice must be filed was increased from fourteen to twenty-one days.

In rewriting the statute, the Legislature attempted to streamline the process. In so doing, the Legislature hoped to both save judicial resources and promote a broader use of habitual offender sentence enhancement. House Legislative Analysis, HB 5306, February 22, 1994, p 2. However, in altering the statutory scheme, the Legislature also removed the preconviction and postconviction contrast that had been the focus of a large amount of appellate deliberation. This, in turn, undercuts the knowledge/lack of knowl-

edge distinction that provided the basis for the two-track analysis of prior case law. See *Fountain, supra; Stratton, supra.* Furthermore, by adding the twenty-one-day rule to the statute, the Legislature acknowledged the correctness of the time-limited approach first established in *Shelton.* The expansion of the time allotted from fourteen to twenty-one days signifies a desire to balance the credible concern of prosecutors that their ability to charge a defendant as an habitual offender not be undercut by too short a period, with the equally credible concern of defendants that they be given adequate notice to meet the charges against them.

We disagree with the prosecution's argument that the trial court acted correctly in the case at hand. That argument relies on the exception carved out in *Hendrick* for verifying out-of-state rap sheets. First, we question whether the practical reasons that gave a court pause back in 1976 regarding whether a prosecutor could rely on an FBI rap sheet are probably no longer applicable in an era of computer databases and high-speed communications. See House Legislative Analysis, HB 5306, February 22, 1994, p 1 ("[T]he facts of the existence of any prior convictions are routinely available as a matter of record.") Second, the *Hendrick* exception applies to the *verification,* not the discovery of out-of-state convictions. As the prosecution readily acknowledges in its brief on appeal, "[a]t the time the original filing was due, the State *had no knowledge* the defendant had committed" the two subsequent felonies at issue. (Emphasis added.)

In any event, we do not believe that the verification exception survived the amendment of the statute. The

first sentence of subsection 2 states that the written notice "shall list the prior conviction or convictions that will *or may be relied upon* for purposes of sentence enhancement." (Emphasis added.) Thus, if questionable convictions emerge from a check of a defendant's criminal history, the prosecutor is not required to make a snap judgment on whether the prosecutor will rely on those convictions for purposes of sentence enhancement. Once having indicated possible reliance on those convictions, the prosecutor then has until the trial court addresses the issue of enhancement to verify the convictions.[13]

We also reject the prosecution's assertion that the decision to strictly enforce the twenty-one-day rule means that prosecutors would hereafter need to provide a list of "every single felony that exists" in its initial filing. We do not believe, and clearly neither did the Legislature, that the twenty-one-day deadline is so onerous that such a drastic outcome would result. Finally, we believe that the fact that the prosecutor in the case at hand chose to proceed by using a supplemental information rather than a written notice is of no import. The prosecutor cannot escape the bight-line test by availing himself of a different legal instrument. *Ellis, supra* at 756-757. "To hold otherwise would be to permit prosecutors to avoid making the necessary 'prompt' decision regarding the level of supplementation, if any, they wish to pursue . . . ." *Id.* at 757.

---

[13] We note that the Court in *Ellis* indicated that its resolution of the notice matter before it comported with the verification exception. *Ellis, supra* at 757, n 1. We do not read this statement as an indication that the Court had considered the issue whether this exception survived the 1994 amendment. Furthermore, we note that the reference in *Ellis* was obiter dicta, and thus, while persuasive, does not bind our decision making.

In altering the statutory scheme, the Legislature had to balance the desire to "make habitual offender procedures more efficient" with the need to make sure that the law "provide adequate procedural safeguards" to protect a defendant's due process rights. House Legislative Analysis, HB 5306, February 22, 1994, p 2. Paramount among the rights that need protection is the defendant's right to receive adequate notice of the allegations the defendant will have to address. Section 13 does not require that the prosecution provide with complete assurance the list of prior convictions that will be relied on, but it does indicate that whatever notice is given must be given within a strict time frame. We will not alter this carefully balanced statute by writing into it an exception that the Legislature itself has chosen not to include.

III

Defendant also argues that he was denied the effective assistance of counsel when defense counsel effectively conceded defendant's guilt in both his opening and closing statements to the jury. We disagree both with defendant's characterization of counsel's remarks and with defendant's assertion that reversal is required. Defendant has failed to establish that a reasonable probability exists that the outcome of the trial would have been different had the remarks not been made. *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

Defendant's conviction of absconding and forfeiting is affirmed. We reverse defendant's sentence for habitual offender, fourth offense, and remand for resentencing as an habitual offender, second offense. We do not retain jurisdiction.