# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 15, 2018

Plaintiff-Appellee,

v

No. 335533
Wayne Circuit Court
LC No. 16-001615-01-FC

ISIAH EDWARD GILLIAM,

Defendant-Appellant.

Before: O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to murder (AWIM), MCL 750.83, assault with intent to do great bodily harm (AWIBH), MCL 750.84, felon in possession of a firearm (felon in possession), MCL 750.224f, carrying a concealed weapon in a vehicle (CCW), MCL 750.227(2), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a third habitual offender, MCL 769.11, to 30 to 60 years' imprisonment for the AWIM conviction, 4 to 20 years' imprisonment for the AWIBH conviction, 2 to 10 years' imprisonment for each of the felon in possession and CCW convictions, and two years' imprisonment for the felon-firearm conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

On February 13, 2016 at around 11:00 a.m., Jwon Richardson ("Richardson") was driving a burgundy car with his passenger Qeyion Johnson ("Johnson"). Richardson stopped and a SUV turned in front of the car. Defendant, a passenger in the backseat of the SUV, fired several shots from the SUV at the car. Richardson was hit in his back and now is paralyzed from the waist down. Johnson identified defendant as the shooter from a photograph, but was too frightened to identify him in court. Defendant testified at trial and maintained that an individual in the car fired first and defendant only shot back in self-defense.

## II. DISCOVERY VIOLATION

Defendant first argues that his due process rights were violated when the prosecution was allowed to disregard discovery rules and, in the middle of trial, present texts and photographs that were purportedly from one of defendant's cell phones.

-1-

An appellate court reviews de novo a defendant's constitutional due process claim. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). However, although couched as a constitutional claim, defendant argues that the trial court erred when it permitted the prosecutor to present evidence that had not been previously provided. "This Court reviews a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Id*.

After selecting a jury, the prosecutor advised the trial court that an initial "phone dump"[1] of one of defendant's phones failed to contain information that the prosecutor and detective knew to be on the phone. They independently searched the phone and took screen shots of a conversation defendant had with another individual that implicated defendant in the shooting. The trial court later ruled that the late disclosure was not grounds for excluding the evidence.

Upon request, a prosecutor must provide "any written or recorded statements, including electronically recorded statements, by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial . . ." MCR 6.201(B)(3). "Unless otherwise ordered by the court, the prosecuting attorney must comply with the requirements of this rule within 21 days of a request under this rule," MCR 6.201(F), and "[i]f at any time a party discovers additional information or material subject to disclosure under this rule, the party, without further request, must promptly notify the other party." MCR 6.201(H). When a trial court determines that there has been a discovery violation, any remedy "must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Such an inquiry includes an examination of "the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *People v Davie*, 225 Mich App 592, 598; 571 NW2d 229 (1997), quoting *People v Taylor*, 159 Mich App 468, 482; 406 NW2d 859 (1987). And, while a trial court has the inherent power to control the admission of evidence in order to "promote the interests of justice . . . the exclusion of otherwise admissible evidence is an extremely severe sanction that should be limited to egregious cases." *People v Greenfield*, 271 Mich App 442, 456 n 10; 722 NW2d 254 (2006).

This is not an egregious case that would warrant the severe sanction of excluding the evidence. Contrary to defendant's contention, the prosecutor did not provide the information in the middle of trial; instead, defense counsel had the information two weeks ahead of trial. Additionally, defense counsel accepted the prosecution's explanation for the tardy evidence as valid and only objected because he lacked the full contents of the messages. But, as the prosecutor argued, there was nothing to prevent defense counsel from independently inspecting the phone. Additionally, defendant readily admitted that the phone belonged to him and, therefore, defendant was ostensibly fully aware of any other relevant information on the phone.

---

[1] A phone dump occurs when software extracts information from a phone, such as call logs, contacts, and text messages.

Moreover, defendant has failed to demonstrate prejudice. While he claims his trial strategy changed, defense counsel never set forth a strategy in his opening remarks. He only asked the jury to listen very carefully, to scrutinize the evidence and then follow the law. The trial court did not abuse its discretion when it declined to sanction the prosecution's alleged discovery "violation" by excluding the evidence.

### III. MOTION FOR MISTRIAL

Defendant next argues that the trial court committed a gaff and implied that defendant had three prior convictions, painting defendant as a career criminal and denying him a fair trial.

An appellate court reviews for an abuse of discretion a trial court's decision regarding a motion for a mistrial. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

Following one witness's examination and cross-examination, the trial court asked the jury if they had any questions:

> *The Court*: Any question from any member of the jury? Looks like we have one.
>
> Counsel, if you could approach. Deputy, if you could get the question, please.
>
> (Discussion held at the bench between the Court and counsel).
>
> *The Court*: All right. We do have three prior- I should say we have three questions from two different jurors. They've been shown and approved by counsel. There is one that I'm gonna have to modify a bit, but I'll ask the others as written.

Later, defense counsel moved for a mistrial, arguing that the trial court's misstatement permitted the jury to infer that defendant had three prior convictions. The trial court denied defense counsel's motion but offered to give a special instruction, which defense counsel declined.

"A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Schaw*, 288 Mich App at 236. The trial court's brief and inadvertent misstatement did not warrant a mistrial, as the statement was not an irregularity that prejudiced defendant and impaired his ability to receive a fair trial. Defense counsel admitted that the misstatement appeared to be unintentional. Counsel makes a colossal assumption that the jury would interpret the misstatement as "prior felonies" and conclude that defendant was a career criminal who must have committed the crimes of which he was accused. That is simply guesswork. Additionally, as the trial court noted, one of the charges lodged against defendant was that he was a felon in possession of a weapon. Defendant's past criminal history was, therefore, at issue at all times. Defense counsel later stipulated to as much and defendant confirmed it when he later testified. Again, in light of defendant's admission that he shot at the victims, it is impossible for him to show that he was prejudiced by the trial court's misstatement.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions where defendant clearly acted in self-defense.

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*.

Once a defendant introduces evidence of self-defense, the prosecutor bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010). "A defendant's history and psychological makeup may be relevant to explain the reasonableness of a defendant's belief that he or she was in inescapable danger." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011). But "reasonableness depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *Id.*

There was no evidence that would have allowed a jury to find that defendant was justified in shooting at the car by an honest and reasonable belief that it was necessary for him to prevent imminent death or great bodily harm to himself or to another. Defendant argues that Richardson was driving "wildly," but his testimony at trial belies that claim. He explained: "Well, if you driving, somebody behind you, if you slow up and they coming fast, they go to the back of you, you switch lanes, they got to switch lane with us." He worried that "they never went past us and they look like sped up behind us. And we got over, let them by." Defendant admitted that the car proceeded forward after the SUV's driver turned, an indication that the perceived threat no longer existed. Defendant's claim that someone in the car brandished and shot a gun is not supported by the physical evidence. No gun or spent casings were found in the car. The jury was free to dismiss defendant's version of events. "It is the jury's duty to determine the weight to be accorded any inferences" and this Court will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

## V. HABITUAL OFFENDER NOTICE

Defendant argues that he is entitled to resentencing as a non-habitual offender because the prosecution failed to follow MCL 769.13 and MCR 6.112(F) regarding the filing and service of the habitual offender notice.

MCL 769.13 provides, in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

-4-

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. *The prosecuting attorney shall file a written proof of service with the clerk of the court.* [Emphasis added; footnote omitted.]

MCR 6.112(F) provides:

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.

While this appeal was pending, our Court decided *People v Head*, ___ Mich App ___; ___ NW2d ___ (Docket No. 334255, issued March 27, 2018), wherein this Court rejected similar claims. This Court explained:

The purpose of the notice requirement " 'is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense.' " *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000) (citation omitted). The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual offender notification. *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).

In this case, defendant is correct that the prosecutor failed to file a proof of service of the notice of intent to enhance defendant's sentence. However, the error is harmless because defendant had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual offender notification.

In particular, the charging documents in the lower court file all apprised defendant of his fourth habitual offender status. Although defendant vaguely asserts that the habitual offender notice was not properly "served" on defendant or defense counsel, defendant does not specify what he means by this. Defendant does not claim that he and defense counsel never received a copy of the charging documents. Moreover, defendant received actual notice on the record at the preliminary examination that he was being charged as a fourth habitual offender. At the arraignment on the information, defendant waived a formal reading of the

information, as permitted by MCR 6.113(B). There was no indication at the arraignment hearing that defendant or his attorney had not received a copy of the felony information. Indeed, MCR 6.113(B) required the prosecutor to give defendant a copy of the felony information, which in this case included the habitual offender notice. Defendant does not assert that the prosecutor failed to comply with that provision. Because defendant had access to the charging documents, he had notice of the charges against him, including the habitual offender enhancement, and he also was informed of the habitual offender enhancement at the preliminary examination.

The conclusion that defendant was not prejudiced and that he received actual notice of the habitual offender enhancement is further supported by the fact that defendant and defense counsel exhibited no surprise at sentencing when defendant was sentenced as a fourth habitual offender. Also, the fact that the prosecutor was seeking to enhance defendant's sentence as a fourth habitual offender was acknowledged on the record by defendant and defense counsel at a pretrial hearing during the discussion of the prosecutor's final plea offer. Defendant has not asserted below or on appeal that he had any viable challenge to his fourth habitual offender status. On the facts of this case, the prosecutor's failure to file a proof of service constituted a harmless error that does not require resentencing. [*Head*, slip op, pp 8-9.]

In light of our decision in *Head*, we conclude that any error was harmless and that defendant is not entitled to be re-sentenced.

## VI. FOURTH AMENDMENT VIOLATIONS

Finally, in his Standard 4 Brief, defendant argues that the search of his uncle's vehicle and subsequent seizure of the cell phone violated his Fourth Amendment rights because the vehicle was not one of the items identified in the search warrant.

On June 27, 2017, defendant, acting on his own behalf, filed a motion to remand for an evidentiary hearing to establish a separate record on the issues of illegal search and seizure. The motion also sought to remand for an evidentiary hearing on defendant's claim that counsel was ineffective for failing to move to suppress the evidence. This Court denied the motion. *People v Gilliam*, unpublished order of the Court of Appeals, issued July 27, 2017 (Docket No. 335533).

Later, this time through counsel, defendant moved to remand the matter, claiming that there was newly discovered evidence. The motion alleged that defendant's uncle, Bryan C. McConer, was willing to testify that he owned the Yukon and that defendant's cell phone was not taken from the home, but from the Yukon. Defendant supported the motion with an affidavit from McConer, who averred that he did not give permission for police to search the vehicle and that when he attempted to retrieve items from inside the truck, he was informed that "my white cell phone was marked as evidence." Defendant claimed that this new evidence shows that the phone was illegally obtained and the jury was misled about where the phone was found. This Court denied the motion. *People v Gilliam*, unpublished order of the Court of Appeals, issued January 3, 2018 (Docket No. 335533).

Quite apart from whether defendant even has standing to contest the search, defendant's claims of error are disposed of because he proceeds with a false premise. Defendant argues that evidence from the phone seized from his uncle's vehicle should have been suppressed but there is absolutely nothing in the record to support his claim that the phone was, in fact, in the vehicle. The testimony was clear that the phone was taken from the bedroom marked "BB."

Detective Johnson testified that he searched the Yukon, thinking that it was the vehicle mentioned in the crime and part of the search. Although Detective Dew acknowledged that the vehicle that was searched was not one described in the search warrant, the fact remains that a phone was *never* recovered from the vehicle. Officer MacDonald testified as follows:

> *Q.* And did you, you physically, you recovered how many cell phones?
>
> *A.* One.
>
> *Q.* One cell phone?
>
> *A.* Yes.
>
> *Q.* Okay. The other three were recovered by – do you know who they were recovered by?
>
> *A.* Not off the top of my head, sir.
>
> *Q.* Do you know if someone recovered a cell phone from a vehicle outside of the house?
>
> *A.* I don't know the answer to that.
>
> *Q.* Okay. Thank you. But certainly you're not aware of any other cell phones. Like there is not like five cell phones that were recovered that day, right?
>
> *A.* Not that I recall, no.

For his part, Officer Horvath testified that he searched room "BB" with MacDonald where a total of four phones were seized, including the Microsoft Windows phone. Horvath remembered finding that particular phone on the floor by the bed. Defendant seeks to create an issue of fact where one simply does not exist. Because the cell phone at issue was not seized from the vehicle, whether defendant has standing to challenge the search and whether officers acted reasonably under the circumstances is irrelevant.

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly