*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 30, 2019

Plaintiff-Appellee,

v

No. 343819
Calhoun Circuit Court
LC No. 2012-003518-FC

JUSTIN DUANE HOWARD,

Defendant-Appellant.

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and felonious assault, MCL 750.82. Defendant was sentenced as a second habitual offender, MCL 769.10, to 30 to 60 years' imprisonment for armed robbery, 10 to 30 years' imprisonment for first-degree home invasion, and three to six years' imprisonment for felonious assault. Defendant contends on appeal that he is entitled to resentencing because his minimum sentencing guidelines range was improperly calculated, and because the prosecution failed to strictly comply with MCL 769.13(2) by filing a proof of service of its notice of intent to seek a second habitual offender enhancement. We affirm.

## I. FACTUAL BACKGROUND

The following factual background was taken from a prior appeal:

In the early morning hours of October 27, 2012, defendant and Kenneth Skidmore broke into Pearlie Parker's home in Battle Creek, Michigan. Although Parker did not personally know defendant, at the time of the home invasion, Parker lived with a man named Shonder Sander, who had known defendant for approximately 20 years. Defendant, who is a plumber, went to Parker's home a day or two before the home invasion to look at the home's plumbing.

On the night of the home invasion, Parker was in the home when she saw two men wearing ski masks running up the driveway. She called the police, but before police arrived, the men entered the home. Parker ripped the ski mask off

-1-

of one of the men, and she recognized him as defendant, the man who had recently been in the home looking at the plumbing. Parker was struck in the face with a gun, which caused her to bleed, and she was asked "where's the money?" Parker gave the men a large sum of cash, including $4,000 Sanders had in the house from the recent sale of his car. At some point, Parker heard police sirens, at which point defendant and Skidmore ran out of the house. [*People v Howard*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2015 (Docket No. 322868), p 1.]

Defendant and Skidmore were caught by the police, and defendant was ultimately convicted of the crimes noted above. *Id*. Defendant appealed his convictions contending that he was denied the right to a speedy trial and that evidence of his identification was inadmissible; this Court affirmed. *Id*. at 2. The Michigan Supreme Court then denied defendant's application for leave to appeal, but on a motion for reconsideration wherein defendant challenged his sentence, the Supreme Court vacated its initial order and remanded to the trial court to determine whether it would have imposed a materially different sentence under the sentencing procedure described in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *People v Howard*, 500 Mich 852 (2016).

On remand, a newly assigned trial judge determined that the trial court would not have imposed a materially different sentence and declined to resentence defendant. Defendant then filed a second appeal, contending that the trial judge had failed to follow proper procedure under *United States v Crosby*, 397 F3d 103 (CA 2, 2005). This Court held that, in *Crosby* remands involving newly assigned judges, defendants must be provided the opportunity to appear in court and be heard before a decision on whether to resentence is made. *People v Howard*, 323 Mich App 239, 253; 916 NW2d 654 (2018). This Court vacated defendant's sentence and remanded for further proceedings. *Id*.

At resentencing, defendant took issue with the scoring of offense variable (OV) 7, MCL 777.37, contending that the evidence did not establish aggravated physical abuse on the part of defendant. Defendant also contended that he could not be sentenced as a second habitual offender because the prosecution failed to strictly comply with MCL 769.13(2) by filing a written proof of service of its notice of intent to seek the enhancement. Without explicitly giving its reasoning, the trial court determined that the scoring of OV 7 was appropriate based upon Parker's testimony. The court further determined that, although the prosecution failed to file a proof of service, the error was harmless because defendant had actual notice of the prosecution's intent to seek an enhanced sentence. The court then imposed defendant's original sentence: 30 to 60 years' imprisonment for armed robbery, 10 to 30 years' imprisonment for first-degree home invasion, and three to six years' imprisonment for felonious assault. Defendant now appeals, and we affirm.

## II. OFFENSE VARIABLE 7

We first address defendant's argument that OV 7 was improperly assessed. Defendant contends that, in cases involving multiple offenders, only the defendant's actual participation in the offense may be used to assess points under OV 7, and that, in this case, the variable does not apply because it was never established that defendant possessed or used the gun during the

offense. Defendant is correct that only his actual participation in the crime is relevant, but incorrect in his assertion that his individual actions did not warrant the assessment of points under OV 7. We see no error in the trial court's assessment of 50 points.

"Issues involving 'the proper interpretation and application of the legislative sentencing guidelines, MCL 777.11 *et seq.*, . . . are legal questions that this Court reviews de novo.' " *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016), quoting *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "[O]ur goal in interpreting a statute 'is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Hardy*, 494 Mich 430, 439; 835 NW2d 340 (2013). "We review de novo whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute." *Id.* at 358 (quotation marks and citation omitted). We review factual findings for clear error, which exists "when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (quotation marks and citation omitted). Factual findings "must be supported by a preponderance of the evidence." *Id.*

MCL 777.37 governs OV 7 and provides, in pertinent part:

(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was treated with sadism, torture, or excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense……………………………….………..50 points

(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense………………………………………………………...0 points [MCL 777.37(1).]

"OV 7 is designed to respond to particularly heinous instances in which the [perpetrator] acted to increase [a victim's] fear by a substantial or considerable amount." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted) (second alteration in original). In determining whether OV 7 is applicable, this Court must consider "whether the defendant engaged in conduct beyond the minimal required to commit the offense," as well as "whether the conduct was intended to make [the] victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. We must "keep[] in mind the legislative command that [the] conduct must be similarly egregious to sadism, torture, or excessive brutality." *People v Rodriguez*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338914); slip op at 3-4.

We have no difficulty concluding that defendant's conduct went beyond the minimal required to commit the offense. The essential elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim while (3) the defendant is armed with a weapon. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014).

Similarly, the elements of first-degree home invasion are prescribed by MCL 750.110a(2), which provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling . . . is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

Lastly, assault with a deadly weapon is prescribed by MCL 750.82, which provides, "a person who assaults another person with a gun . . . without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony. . . ." MCL 750.82(1). Parker testified that defendant assisted in dragging her into her bedroom by her hair, and testified that defendant told Skidmore to shoot Parker after she glimpsed defendant's face. Neither physically brutalizing Parker by dragging her by her hair nor encouraging Skidmore to kill Parker were necessary elements in any of the above crimes, and we agree with the trial court that defendant's conduct went beyond the minimal conduct required to commit the offenses.

Whether defendant's conduct was similarly egregious to sadism, torture, or excessive brutality is a more difficult question. We note that much of the caselaw concerning the application of OV 7 involves conduct that is extreme, horrific, and often physically brutal.[1] We also note the similarities between this case and this Court's recent decision in *Rodriguez*. In that case, the trial court determined that 50 points for OV 7 was appropriate where, during a robbery, the defendant "threatened to pull out a knife and stab the victim if [the victim] did not comply with [the] defendant's demands." *Rodriguez*, ___ Mich App at ___; slip op at 4 n 5. This Court disagreed, contending that the defendant's conduct did not "rise to the level of egregious conduct similar to sadism, torture, or excessive brutality designed to substantially increase the fear and anxiety of [the victim]." *Id*. at 4. This Court further noted that the defendant's conduct did nothing beyond threatening the victim, and "[a] threat is a necessary element" of a robbery. *Id*.

We believe the thrust of *Rodriguez* was to say that verbal threats and statements alone are not sufficient to assess points under OV 7. See *Id*. at 4 (holding that OV 7 was not applicable because the defendant "did no more" than threaten the victim, and noting that cases applying OV 7 tend to involve "extreme and horrific actions" on the part of the defendant). This is in keeping

---

[1] One exception includes *People v Hornsby*, 251 Mich App 462, 468-469; 650 NW2d 700 (2002), wherein the defendant pointed a cocked gun at the victim and threatened her as well as other individuals in a store, and this Court held that the conduct was sufficient to assess 50 points under OV 7. Importantly, at the time *Hornsby* was decided, the controlling statute "did not contain the requirement that the conduct be 'similarly egregious' to conduct that falls within sadism, torture, or excessive brutality." *Rodriguez*, ___ Mich App at ___; slip op at 4. See also *People v Hunt*, 290 Mich App 317, 324-325; 810 NW2d 588 (2010).

with the explicit language of the controlling statute, which states, "OV 7 is aggravated *physical abuse*." MCL 777.37(1) (emphasis added). Accordingly, while defendant's statements to Skidmore alone might not have been sufficient to assess points under OV 7, unlike in *Rodriguez*, defendant also physically brutalized Parker by dragging her into a bedroom by her hair. We discern no clear error from the trial court determining that defendant's conduct was excessively brutal and designed to substantially increase Parker's fear and anxiety during the offense.

### III. SENTENCE ENHANCEMENT

We next address defendant's argument that the prosecution's failure to comply with the proof of service provisions of MCL 769.13 precluded the trial court from applying the second-offense habitual offender sentence enhancement. Because defendant received actual notice of the prosecution's intent to seek the sentencing enhancement, and because defendant was not prejudiced in his ability to respond, we affirm.

We review the interpretation and application of statutory provisions and court rules de novo, and we enforce unambiguous provision in both as written. *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

MCL 769.13 provides, in pertinent part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice *shall be* filed with the court and *served upon the defendant* or his or her attorney *within the time provided in subsection (1)*. The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. *The prosecuting attorney shall file a written proof of service with the clerk of the court*. [MCL 769.13(1) and (2) (emphasis added).]

Similarly, MCR 2.112 provides, in pertinent part:

> (F) Notice of Intent to Seek Enhanced Sentence. A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense. [MCR 2.112(F).]

The purpose of the notice requirement "is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense." *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000) (quotation marks and citation omitted).

Defendant relies upon the Michigan Supreme Court's orders in *People v Cobley*, 463 Mich 893 (2000), and *People v Muhammad*, 498 Mich 909 (2015), for the contention that MCL 769.13(2) is mandatory and not permissive, and that anything less than strict compliance with the statute warrants reversal. In *Cobley*, the Michigan Supreme Court reversed an unpublished opinion of this Court which held that the prosecution's failure to strictly comply with the notice statute did not require reversal because the defendant had actual notice of the prosecution's intent to seek a sentencing enhancement. *Cobley*, 463 Mich at 893. In an order remanding to the trial court for resentencing without the sentencing enhancement, the Michigan Supreme Court noted that "the prosecutor ha[d] not proven that the notice of sentence enhancement was served on [the] defendant within 21 days after the defendant was arraigned." *Id*. Similarly, in *Muhammad*, the Michigan Supreme Court reversed an unpublished opinion of this Court that held that a prosecution's failure to timely serve a notice of intent to seek an enhanced sentence was harmless error. *Muhammad*, 498 Mich at 909. Notably, the issue in both *Cobley* and *Muhammad* was whether the prosecution had established that the defendants received actual notice of their respective sentencing enhancements in a timely manner; in both cases, the defendants had not received timely notice.

Defendant does not argue on appeal that he did not receive actual notice of his sentencing enhancement, instead basing his entire argument on the prosecution's procedural failure to file a proof of service. In such cases where the filing of a proof of service is the sole issue, we do not believe *Cobley* and *Muhammad* are dispositive. More similar to this case is *People v Johnson*, 495 Mich 919 (2013), wherein the Michigan Supreme Court affirmed this Court's unpublished opinion adopting the position that a prosecutor's failure to strictly comply with MCL 769.13(2) did not require reversal because the defendant received actual notice of his sentencing enhancement. The Supreme Court noted that the defendant "was given timely notice of his enhancement level and had sufficient prior convictions to support" the enhancement. *Johnson*, 495 Mich at 919. More recently, in *People v Head*, 323 Mich App 526, 542-545; 917 NW2d 752 (2018), this Court addressed that same situation: not whether the defendant received timely notice, but whether the prosecution's failure to file a proof of service of that notice was an error requiring reversal.

In *Head*, this Court held that, where a defendant has actual notice and is "not prejudiced in his ability to respond to the habitual offender notification," the prosecution's failure to file a proof of service constitutes harmless error. *Id*. at 544. This Court noted that the defendant received actual notice of the sentencing enhancement from his charging documents, and received notice on the record at his preliminary examination. *Id*. at 544-545. Notably, the defendant filed

an application for leave to appeal to the Michigan Supreme Court, and that application was denied. *People v Head*, 503 Mich 918 (2018).[2]

We find this case to be similar to *Head*. Defendant's charging documents included the notice of intent to seek the sentencing enhancement, and defendant was arraigned on those documents on October 29, 2012. There is no indication that defendant or his counsel did not receive copies of the documents, and importantly, we note that defendant was informed on the record of the sentencing enhancement at no less than three status conferences. Neither defendant nor his counsel objected to the enhancement at the time. Moreover, we note that, as in *Head*, other than the procedural defect, defendant "has not asserted in the trial court or on appeal that he ha[s] any viable challenge" to his second-offense habitual offender status. *Head*, 323 Mich App at 545. We conclude that the prosecution's failure to file a proof of service under MCL 769.13(2) was harmless error because defendant had actual notice of his sentencing enhancement and was not prejudiced in his ability to challenge that enhancement.

---

[2] We note that, in an unpublished opinion decided approximately one year before *Head*, this Court seemed to go in the opposite direction. Citing *Cobley* and *Muhammad*, this Court vacated a defendant's sentence and remanded for resentencing without a sentencing enhancement because, although the enhancement was noted on the defendant's felony information, there was "no written proof of service in the circuit court file as is required by MCL 769.13(2)." *People v Straughter*, unpublished per curiam opinion of the Court of Appeals, issued April 11, 2017 (Docket No. 328956), pp 9-10. The prosecution filed an application for leave to appeal and the Supreme Court ordered oral argument on the application while also providing as follows:

> The appellant shall file a supplemental brief within 42 days of the date of this order addressing: (1) whether the harmless error tests articulated in MCR 2.613 and MCL 769.26 apply to violations of the habitual offender notice requirements set forth in MCL 769.13, compare *People v Cobley*, 463 Mich 893 (2000), with *People v Johnson*, 495 Mich 919 (2013); (2) whether the prosecutor may establish that a defendant received a habitual offender notice at any time before the 21-day time limit in MCL 769.13 by any means other than a proof of service; and (3) whether providing a habitual offender notice in district court satisfies the requirement set forth in MCL 769.13 that the habitual offender notice be served within 21 days after the defendant's arraignment on the information. [*People v Straughter*, 501 Mich 944, 944-945 (2017).]

Oral argument on the application has since been held, but no order granting or denying leave has been entered. Following oral argument, however, the Supreme Court granted a motion by the prosecution to amend its request for relief. *People v Straughter*, 918 NW2d 525 (Mich, 2018). The prosecution now requests a remand to this Court for reconsideration in light of *Head*. Although the ultimate outcome in *Straughter* may have implications on this case, we note that *Head* remains binding precedent, and the mere filing of an application for leave to appeal "does not diminish [its] precedential effect." MCR 7.215(C)(2).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood
/s/ Thomas C. Cameron