# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENNETH DAVID COLBERT-BRAND,

        Defendant-Appellant.

UNPUBLISHED
December 6, 2018

No. 338483
Calhoun Circuit Court
LC No. 15-003599-FH

Before: SERVITTO, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (second offense) (felony-firearm), MCL 750.227b. The trial court originally sentenced defendant to 96 to 120 months imprisonment for the felon-in-possession conviction, to be served consecutively to the statutorily-mandated 5 years for the second-offense felony-firearm conviction, with credit for 638 days of jail time. The trial court subsequently resentenced defendant, imposing the same sentences but reducing his jail credit to 98 days. We affirm defendant's convictions, and remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The complainant, Autumn Hawkins, testified that she and defendant had a romantic relationship from at least 2012 to 2014. On December 25, 2014, defendant and Hawkins had an argument concerning Hawkins' interactions with other men on Facebook©. Hawkins testified that defendant entered her house without permission the following morning, entered her bedroom, pointed a handgun at her, choked her, and demanded that she allow him to access Facebook© on her phone. However, service for Hawkins' phone had been interrupted because the bill was unpaid. Hawkins testified that defendant insisted that Hawkins accompany him to pay the phone bill so that he could review her social media activity. Defendant and Hawkins travelled to several locations while unsuccessfully attempting to pay the phone bill. Hawkins initially drove her own car, but defendant later drove his car when hers became low on fuel. Hawkins testified that she was afraid to try to run away from defendant because she did not know where defendant's gun was and she could not "outrun a bullet." She testified that at one point during the drive she observed the gun in the side pocket of the driver's door of defendant's car. Defendant ultimately dropped Hawkins off at her home. Hawkins contacted the Battle

-1-

Creek Police, who arrested defendant after a vehicular chase. A witness, Tina Evans, observed defendant's vehicle drive by her house on Sherman Street at a high rate of speed, pursued by police cars. Shortly thereafter, she found a handgun in her front yard. She testified that she had left her house earlier that day for an appointment, and that the gun was not in her front yard at that time. DNA testing of the gun revealed at least 2 donors; the DNA of the major donor was matched to defendant's DNA.

Defendant testified at trial, and denied invading Hawkins' home, falsely imprisoning her, pointing a gun at her, or choking her. He stated that he had argued with Hawkins on the night of December 25th, and that they continued to argue throughout the next day while they travelled to various locations in an attempt to pay Hawkins' phone bill; however, he said that Hawkins had accompanied him voluntarily. Defendant testified that, while driving around with Hawkins, he stopped to deliver marijuana at various locations. He further testified that, after dropping Hawkins off, he called his brother, who lived at "Sherman and McKinley," and told him to "come outside and—and bring my gun outside." Defendant clarified that he had intended to retrieve the gun from his brother, but that he did not have the opportunity to do so because of the police chase. Defendant agreed that the handgun found in Evans' yard was his, and that he had handled it before.

The jury convicted defendant as stated.[1] At sentencing, defendant's counsel raised the issue of how much jail credit defendant should receive. The trial court noted that the probation department had indicated that defendant should receive 638 days of credit. The prosecution stated that it had no objection to that amount of jail credit. The trial court assessed 5 points for offense variable (OV) 1, 5 points for OV 3, 10 points for OV 4, and 10 points for OV 9. It issued a judgment of sentence reflecting defendant's sentences and indicating that defendant was to receive 638 days of jail credit.

Thereafter, on its own initiative, the trial court ordered that defendant appear for resentencing. At the resentencing hearing, the trial court told defendant that "there was an error in the original recommendation and sentence giving you more credit than you were entitled to so [sic] we're here for re-sentencing to correct the record." The trial court resentenced defendant as stated, reducing his jail credit to 98 days.

This appeal followed.

## II. SPEEDY TRIAL

Defendant argues that his right to a speedy trial was violated. We disagree. Defendant moved for dismissal in the trial court due to the lack of a speedy trial; the trial court denied that motion. This issue is therefore preserved for appeal. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009).

---

[1] The jury acquitted defendant of unlawful imprisonment, home invasion, assault by strangulation, and related felony-firearm charges.

We review for clear error a trial court's factual findings, while we review a constitutional issue de novo as a question of law. *Id.*; see also *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006).

The right to a speedy trial is guaranteed to criminal defendants by the United States and Michigan constitutions, as well as by statute and court rule. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A); *Williams*, 475 Mich at 261. In determining whether a defendant has been denied a speedy trial, a court must weigh the conduct of the parties. Relevant factors include: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant from the delay. *Williams*, 475 Mich at 261-262. A defendant must establish prejudice when the delay is less than 18 months, *People v Collins*, 388 Mich 680, 695; 202 NW2d 769 (1972), whereas a delay of more than 18 months is presumptively prejudicial, *Williams*, 475 Mich at 262. In assessing the reasons for the delay, a trial court must examine whether each period of delay is attributable to the prosecution or the defendant. *People v Walker*, 276 Mich App 528, 541-542; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), overruled in part by *People v Lown*, 488 Mich 242; 794 NW2d 9 (2011).

Here, defendant was first arrested for the charged offenses on December 26, 2014. However, on June 8, 2015, the prosecution dismissed the charges against him by *nolle prosequi* order indicating that the prosecutor's office was still awaiting the results of DNA testing on samples taken from the recovered handgun. The prosecutor's office refiled the charges against him on October 2, 2015. Defendant was ultimately tried on February 7, 2017. The parties disagree about whether the time period to be considered in analyzing defendant's speedy trial challenge should begin at the time that defendant was originally arrested (which would result in a time period greater than 18 months) or at the time the charges were re-filed (which would result in a time period of less than 18 months). Whether the period between a defendant's arrest and an initial dismissal without prejudice should be considered while calculating the delay in a speedy-trial challenge is an issue that we need not decide in this case because "we conclude that even considering the time elapsed before the initial dismissal in this case, defendant was not denied a speedy trial." *People v Wickham*, 200 Mich App 106, 110; 503 NW2d 701 (1993).[2]

---

[2] We note that, in Michigan, after an order of *nolle prosequi* has been entered, the prosecution must "obtain a new indictment and begin proceedings anew if [it] wishe[s] to reinstate the original charge." *People v Curtis*, 389 Mich 698, 706; 209 NW2d 243 (1973). Once an order of *nolle prosequi* has been entered, the prosecution "may not merely seek to reinstate a previous indictment or conviction." *People v Ostafin*, 112 Mich App 712, 716; 317 NW2d 235 (1982). In other words, and unlike the *nolle prosequi* procedure in some other states, the refiling of charges after a *nolle prosequi* order in Michigan is not simply a continuation of the initial proceeding. Although we find it unnecessary to decide the issue, this procedural distinction supports the conclusion that a defendant's right to a speedy trial attaches when charges are refiled against him after a *nolle prosequi* dismissal. Compare *United States v MacDonald*, 456 US 1; 102 S Ct 1497; 71 L Ed 2d 696 (1982) and *Klopfer v North Carolina*, 386 US 213; 87 S Ct 988; 18 L Ed 2d 1 (1967).

The record reveals that defendant made numerous motions in the trial court that extended the length of the case. For example, on December 22, 2015, defendant moved to remand the case to the district court for a new preliminary examination, arguing that he could not merely be bound over again on the same information. This motion was accompanied by his attorney's motion to withdraw. During the pendency of these motions, defendant also filed discovery motions and obtained a new attorney. On March 28, 2016, the trial court granted defendant a new preliminary examination. This period of delay can be attributed to defendant.

On May 17, 2016, defendant also moved for funds to obtain an expert witness, which motion the trial court granted after a hearing in June 2016. In August 2016, defendant moved to adjourn the trial date of August 30, 2016 so that he could obtain a DNA expert. At a hearing on August 30, defense counsel specifically agreed that the period between August 30 and the next scheduled trial date could be attributed to defendant. The next trial date was set for November 15, 2016. On November 10, 2016, defendant again moved to adjourn trial and to obtain new counsel, which motion the trial court granted at a hearing on November 14, 2016, setting the trial date for February 7, 2017. Therefore, the period between May 17, 2016 and February 7, 2017 is attributable to defendant. See *Vermont v Brillon*, 556 US 81, 90-91; 129 S Ct 1283; 173 L Ed 2d 231 (2009) (delays sought by defense counsel are attributable to defendant).

The remaining periods of time, apart from the period between the dismissal of the initial charges and the refiling of the charges, can be attributed to delays inherent in the court system that, although technically attributable to the prosecution, are given a neutral tint and only minimal weight. *Waclawski*, 286 Mich App at 666. In the absence of bad faith, the delay between the dismissal and refiling of the charges "should not be attributed to either side because there was no charge pending against defendant" during that period. *Wickham*, 200 Mich App at 111. We see no such bad faith here. *Id*.

There are no significant periods of delay in this case that are attributable to the prosecution. Defendant substantially delayed the proceedings against him in the trial court by repeatedly seeking new attorneys. His trial counsel then attempted, on the first day of trial, to adjourn the trial yet again, stating that defendant and counsel had suffered a "breakdown in communication." Even though defendant asserted his right to a speedy trial, and even assuming for the sake of argument that defendant was prejudiced,[3] the delays flowing from defendant's dissatisfaction with his appointed attorneys did not constitute a denial of his constitutional right to a speedy trial. *Williams*, 475 Mich at 261.

---

[3] Apart from arguing that the length of the delay is presumptively prejudicial, defendant does not specifically argue any prejudice to his defense, other than the fading memory of witnesses (although defendant presented no witnesses in his defense at trial). Defendant was incarcerated during the proceedings below and could not post bond due to his status as a parolee, and therefore argues that he suffered prejudice to his person. *Wickham*, 200 Mich App at 112.

III. SENTENCING ISSUES

Defendant also raises numerous challenges to his sentence, which we will address in turn.

A. AUTHORITY TO ORDER RESENTENCING

Defendant argues that the trial court lacked the authority to sua sponte order resentencing in order to alter the amount of jail credit awarded to defendant. We disagree. We review de novo the interpretation and application of statutes and court rules. See *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

As stated, after discussing the issue of jail credit with the parties at sentencing, orally agreeing to 638 days, and issuing a judgment of sentence listing defendant's jail credit as 638 days, the trial court sua sponte ordered defendant's resentencing, ultimately issuing a new judgment of sentence giving defendant credit for 98 days. Under *Comer* and the then-existing version of MCR 6.429, this was error; however, subsequent amendment of MCR 6.429 has retroactively validated the trial court's actions.

MCR 6.435 provides in relevant part:

(A) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it.

(B) Substantive Mistakes. After giving the parties an opportunity to be heard, and provided it has not yet entered judgment in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous.

At the time of defendant's sentencing and resentencing, MCR 6.429 provided in relevant part:

(A) A motion to correct an invalid sentence may be filed by either party. The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law.

As the *Comer* court noted, although "MCR 6.435(B) contemplates the court acting on its own initiative to correct substantive mistakes," such ability "ends upon entry of the judgment." *Comer*, 500 Mich at 294. The *Comer* court further noted that the language of MCR 6.429 at the time "authorize[d] either party to seek correction of an invalid sentence upon which judgment has entered, but the rule [did] not authorize a trial court to do so sua sponte." *Id*. at 297. The *Comer* Court concluded that "the trial court's authority to correct an invalid sentence on its own initiative ends upon entry of the judgment of sentence." *Id*. The *Comer* Court therefore upheld the trial court's sentence of the defendant, notwithstanding that it was "invalid" because it failed to order lifetime electronic monitoring as required by statute. *Id*. at 300-301.

Subsequent to the Court's decision in *Comer*, MCR 6.429 was amended to read in relevant part:

**(A) Authority to Modify Sentence.** The court may correct an invalid sentence, on its own initiative after giving the parties an opportunity to be heard, or on motion by either party. But the court may not modify a valid sentence after it has been imposed except as provided by law. Any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence.

This amendment was specifically made in response to *Comer* and "provides courts with authority to sua sponte address erroneous judgments of sentence" within 6 months of the entry of the judgment of conviction and sentence. See MCR 6.429, staff comment to first September 2018 Amendment.

Here, the trial court determined that it had erroneously given defendant credit for jail time served while being held on a parole detainer, because that time should have been credited to the sentence from which parole was granted. See *People v Johnson*, 283 Mich App 303, 308; 769 NW2d 905 (2009). Defendant's sentence was therefore "invalid" because while jail credit is available for time served in jail prior to sentencing "because of being denied or unable to furnish bond for the offense" of which defendant was convicted, see MCL 769.11b, "when a defendant is held in jail on a parole detainer, bond is neither set nor denied." See *Johnson*, 283 Mich App at 308. Therefore, defendant was not entitled to credit for jail time served while being held on a parole detainer, because that time was being served on his previous sentence.

Under the previous version of MCR 6.429 and *Comer*, the trial court's sua sponte revision of defendant's sentence was improper. We disagree with the trial court and the prosecution that the alteration of defendant's jail credit was the correction of a clerical error. Cases cited by the prosecution treating alteration of the amount of jail credit as a clerical error are distinguishable; in those cases, the judgment of sentence did not reflect what the trial court ordered at the sentencing hearing. By contrast, the parties in this case specifically discussed with the trial court an award of 638 days of jail credit, and the judgment of sentence reflected that number. If the number was arrived at by mistake, it was a substantive mistake, a correction of which could only be accomplished using the procedures established by the court rules. *Comer*, 500 Mich at 300.

However, new and amended court rules generally apply to all proceedings in actions brought on or after the effective date, as well as pending cases, unless the application would not be feasible or would work injustice. See MCR 1.102; *Reitmeyer v Schultz Equipment & Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 332 (1999). A case is pending when it is on direct review. See *People v Sexton*, 458 Mich 43, 54; 580 NW2d 404 (1998). The trial court modified defendant's sentence within 6 months after the original judgment of sentence was entered, after giving the parties the opportunity to be heard on the issue. MCR 6.429. And we see nothing unfeasible or unjust in not allowing defendant to "double dip" his jail time served by applying it both to his previous sentence and the sentences for his current convictions. Therefore, although the trial court's actions were not permissible under the previous version of MCR 6.429 as interpreted by *Comer*, the trial court complied with the current version of MCR 6.429, and defendant's claim of error must fail.

## B. OFFENSE VARIABLES

Defendant also argues that the trial court erroneously assessed points for OVs 1, 3, 4, and, in his Standard 4[4] brief, OV 9. We disagree with regard to OV 1, but agree with regard to the remaining OVs. We review for clear error a trial court's factual findings underlying its scoring decisions, which must be supported by a preponderance of the evidence, and we review de novo whether the facts as found justify a particular score. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Defendant argues, in essence, that the trial court erred by considering defendant's conduct directed at Hawkins in assessing points under these variables, because defendant was only convicted of possession of a firearm as a felon. We agree in general that offense variables "are scored by reference only to the sentencing offense, except where specifically provided otherwise." *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009). However, the trial court could still assess points under OV 1 (aggravated use of a weapon) related to the sentencing offense of felon-in-possession. The trial court assessed 5 points for OV 1 because "a weapon was displayed or implied." MCL 777.31(1)(e). Hawkins testified that she had observed a handgun while in defendant's vehicle. This display occurred while defendant possessed the handgun and involved his possession and control of the gun. A preponderance of the evidence therefore supports this score. *Hardy*, 494 Mich at 438; see also *People v Biddles*, 316 Mich App 148, 166; 896 NW2d 461 (2016) (remanding to allow the trial court to consider whether to assess 5 points for OV 1 related to the sentencing offense of felon-in-possession).

However, we hold that the evidence does not support the trial court's assessment of points for OV 3 (physical injury to the victim not requiring treatment), MCL 777.33(1)(e), OV 4 (psychological injury to victim), MCL 777.34(1)(a), or OV 9 (number of victims), MCL 777.39(2)(a). The application of these variables to the sentencing offense of felon-in-possession was rejected in *Biddles*, 316 Mich App at 165, 167. The Court in *Biddles* held that any physical or psychological injury, or threat of injury, that occurred while the defendant possessed a firearm as a felon did not occur "as a result of defendant's status as a felon and his being seen carrying a gun" and further that "defendant's commission of the offense of felon-in-possession, in and of itself, simply did not place anyone in danger of physical injury or death." *Id*. at 167. We are bound to follow *Biddles*. MCR 7.215(J)(1).

Because a reduction in the scores for OVs 3, 4, and 9 would alter defendant's recommended minimum sentence range under the sentencing guidelines, resentencing is required. See *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

## C. HABITUAL OFFENDER NOTICE

Defendant also argues that the habitual offender sentencing enhancement he received on his felon-in-possession conviction is void because he was not served with notice that the

---

[4] A supplemental appellate brief filed in propria persona pursuant to Michigan Supreme Court Order 2004-6, Standard 4.

prosecution intended to seek such an enhancement. We disagree. We review this issue de novo as a question of law involving the interpretation and application of statutes and court rules. *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018).

As this Court recently explained in *Head*:

MCL 769.13 provides, in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Likewise, MCR 6.112(F) provides:

> A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.

The purpose of the notice requirement " 'is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense.' " *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000) (citation omitted). The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual offender notification. *People v Walker*, 234 Mich App 299, 314-315; 93 NW2d 673 (1999). [*Head*, 323 Mich App at 542-544.]

Here, defendant is correct that a proof of service of the notice of intent to enhance defendant's sentence does not appear in the lower court record. However, as in *Head*, "the error is harmless because defendant had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual offender notification." *Id*. at 544. Defendant admits that the charging documents contained notice of his habitual offender status and that he received a copy of the felony information. Further, defendant's habitual offender status was discussed on the record before trial during a discussion of the prosecution's final plea offer, which included an offer not to seek habitual offender enhancement. As in *Head*, "[o]n the facts of this case, the prosecutor's failure to file a proof of service constituted a harmless error that does not require resentencing." *Id*. at 545.[5]

## D. *TANNER* RULE

Defendant also argues that his felon-in-possession sentence of 96 to 120 months imprisonment violates the two-thirds rule of *Tanner*, 387 Mich at 690. The prosecution concedes that resentencing is required on this issue. We agree.

"[A]ny sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act." *Id*. The trial court set the maximum sentence for defendant's felon-in-possession conviction as a fourth habitual offender at 120 months. See MCL 769.121(1)(b), (2). The highest permissible minimum sentence under *Tanner*, therefore, was 80 months. *Tanner*, 387 Mich at 690. Resentencing is required; on remand, the trial court shall impose a minimum sentence of not more than two-thirds of the maximum sentence imposed.[6]

## IV. STANDARD 4 BRIEF

In his Standard 4 brief, defendant raises numerous issues related to both his convictions and sentencing. We have already addressed defendant's challenge to OV 9. We find it unnecessary to address each of his remaining issues at length. In brief, the evidence against defendant was sufficient; defendant's challenge to the sufficiency of the evidence supporting his felon-in-possession charge impermissibly invites this Court to weigh Hawkins' and defendant's credibility. *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). Additionally, the trial court did not abuse its discretion by refusing to grant yet another adjournment on the first day of trial, when (as defendant asserts in his speedy trial challenge) the case had already been pending

---

[5] We note that our Supreme Court is currently considering an application for leave to appeal to address in part "whether the harmless error tests articulated in MCR 2.613 and MCL 769.26 apply to violations of the habitual offender notice requirements set forth in MCL 769.13," *People v Straughter*, 501 Mich 944; 904 NW2d 633 (2017), and that oral argument regarding that application was heard on October 9, 2018.

[6] Defendant also argues that his minimum sentence was disproportionate under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). Because we are remanding for resentencing, we need not address the issue of proportionality.

for at least 17 months and it had already granted previous adjournments at defendant's request. See *People v Williams*, 386 Mich 565, 577; 194 NW2d 337 (1972). Nor has defendant demonstrated that he received the ineffective assistance of counsel; defendant's issues with attorneys whom he ultimately declined to allow to represent him at trial are not relevant, and with regard to his trial counsel, defendant has not established that his trial counsel failed to conduct an adequate investigation into his case and does not identify potential fact or expert witnesses who could have aided his defense. See *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003); *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). And defendant's trial counsel was not ineffective for failing to make meritless objections. *Payne*, 285 Mich App at 190. The prosecution did not argue facts not in evidence when it made a statement during closing arguments that defendant had thrown the gun out the window of his car or argued that the DNA evidence supported the conclusion that defendant had handled the gun more recently than he had testified; the prosecution is allowed to argue reasonable inferences from the evidence. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Further, the jury was instructed that the statements of attorneys are not evidence; jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant alleges two discovery violations on the part of the prosecution: that the prosecution failed to obtain surveillance videos from several locations that defendant and Hawkins had visited, and that the prosecution failed to turn over a report about which its DNA expert testified at trial. With regard to the former, and even assuming that the videos would have aided defendant, the prosecution does not owe defendant a duty to seek out exculpatory evidence on his behalf that is not within its control. *People Dimambro*, 318 Mich App 204, 213; 897 NW2d 233 (2016). And with regard to the latter, the record shows that the prosecution sought to admit the report as an exhibit, that defense counsel was allowed to examine the report before its admission to "make sure it's the copy I have," and that defense counsel thereafter had no objection to its admission. Defendant has not established that any suppression of evidence or discovery violation occurred. See *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014).

Finally, defendant argues that his right to due process of law was violated by the prosecution's issuance of a *nolle prosequi* order outside of his presence, and by the subsequent refiling of the charges against him. However, the prejudice that defendant asserts in both instances is the impairment of his right to a speedy trial, which we have addressed in Section II of this opinion. Because we hold that no such impairment occurred, these claims of error are meritless.

Affirmed with regard to defendant's convictions, and remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra