*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SCOTT GORDON PAYNE,

      Defendant-Appellant.

UNPUBLISHED
June 18, 2020

No. 345734
Kent Circuit Court
LC Nos. 06-011875-FC;
          06-012819-FH

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order denying his motion for relief from judgment. We affirm.

In 2007, following a jury trial in five separate cases, defendant was convicted in four of the cases of the following offenses: (1) in LC No. 06-011607-FC, first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f); (2) in LC No. 06-011875-FC, two counts of CSC-I, MCL 750.520b(1)(e) and (f), (3) in LC No. 06-011944-FC, third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a); and (4) in LC No. 06-012819-FH, another count of CSC-III, MCL 750.520d(1)(b).[2] The trial court sentenced defendant in three of the cases as a third-offense habitual offender, MCL 769.11, imposing sentences of (1) life imprisonment for the CSC-I conviction in LC No. 06-011607-FC; (2) life imprisonment for one count of CSC-I (Count I) and 40 to 60 years' imprisonment for the other count of CSC-I (Count II) in LC No. 06-011875-FH; and (3) 10 to 30 years' imprisonment for the CSC-III conviction in LC No. 06-011944-FC. In

---

[1] *People v Payne*, unpublished order of the Court of Appeals, entered March 8, 2019 (Docket No. 345734).

[2] In a fifth case, LC No. 06-012818-FH, the jury acquitted defendant of a charge of assault with intent to commit sexual penetration, MCL 750.520g.

addition, the trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 20 to 40 years' imprisonment for the CSC-III conviction in LC No. 06-012819-FH.[3]

In a prior appeal, this Court reversed defendant's convictions in LC Nos. 06-011607-FC and 06-011944-FC, but affirmed his convictions and sentences in LC Nos. 06-011875-FC and 06-012819-FH. *People v Payne*, 285 Mich App 181, 201; 774 NW2d 714 (2009). This Court held that laboratory reports containing the results of DNA testing were erroneously admitted in LC Nos. 06-011607-FC and 06-011944-FC because the analysts who conducted the testing did not testify at trial, and the erroneous admission of the reports was "decisive to the outcome of defendant's trial" in those two cases because, unlike in the other cases, defendant had not admitted that he solicited the victims for sex, or that he had any contact with the victims. *Id*. at 196-200. Conversely, the analysts who conducted the DNA testing in LC Nos. 06-011875-FC and 06-012819-FH testified at trial, and this Court "perceive[d] no evidentiary or Confrontation Clause error with respect to the admission of the laboratory reports" in those two cases. *Id*. at 200 n 7.[4] Accordingly, this Court affirmed defendant's convictions in LC Nos. 06-011875-FC and 06-012819-FH.

At issue in this appeal are defendant's sentences in LC Nos. 06-011875-FC and 06-012819-FH, which this Court affirmed in *Payne*. After this Court's decision in *Payne*, defendant filed an application for leave to appeal with our Supreme Court, which denied the application. *People v Payne*, 486 Mich 925; 781 NW2d 839 (2010). Thereafter, defendant sought relief from his convictions and sentences in LC Nos. 06-011875-FC and 06-012819-FH by filing a petition for a writ of habeas corpus in federal district court, which denied the petition. *Payne v Washington*, unpublished opinion of the United States District Court for the Western District of Michigan, issued March 1, 2017 (Case No. 1:11-cv-325). That decision was affirmed by the United States Court of Appeals for the Sixth Circuit, *Payne v Horton*, unpublished order of the United States Sixth Circuit Court of Appeals, issued October 12, 2017 (Docket No. 17-1324), and the United States Supreme Court denied defendant's petition for writ of certiorari. *Payne v Horton*, ___ US ___; 138 S Ct 1170; 200 L Ed 2d 318 (2018).

In April 2018, defendant filed a motion for relief from judgment under MCR 6.508(D) in the trial court. Defendant contended that he was entitled to be resentenced in LC Nos. 06-011875-FC and 06-012819-FH because the offenses in those cases were committed before the habitual-offender statutes were amended by 1994 PA 110, and therefore, he was entitled to a jury trial to determine his habitual-offender status. Defendant also claimed that the trial court relied on inaccurate information when sentencing him in LC No. 06-011875-FC because it relied on the offenses in LC Nos. 06-011607-FC and 06-011944-FC to find "that [d]efendant had committed prior violent sexual assaults." Defendant argued that because the trial court based its sentences in LC No. 06-011875-FC on constitutionally infirm convictions, resentencing was required. He asserted that he had demonstrated good cause under MCR 6.508(D)(3)(a) because he could not

---

[3] Only defendant's sentences in LC Nos. 06-011875-FC and 06-012819-FH are at issue in this appeal.

[4] This Court remanded for a new trial in LC Nos. 06-011607-FC and 06-011944-FC at the election of the prosecutor, *id.* at 201, but the prosecutor elected not to retry defendant in those two cases.

raise this issue on direct appeal or in a motion to remand for resentencing, inasmuch as the issue was not "ripe" before this Court vacated his convictions in LC Nos. 06-011607-FC and 06-011944-FC. Accordingly, defendant requested resentencing in LC No. 06-011875-FC.

In response, the prosecution argued that defendant had not demonstrated good cause for his failure to raise these claims of error on direct appeal to this Court. While acknowledging that ineffective assistance of counsel may satisfy the good cause requirement, the prosecution pointed out that "the present case does not simply concern pleadings filed [only] by trial counsel and appellate counsel[,]" and that defendant, in his direct appeal to this Court and in his application for leave to the Michigan Supreme Court, as well as his petitions for habeas relief in the federal courts, had continually raised new issues to challenge his convictions and sentences. At no time, however, did defendant raise any issues concerning his habitual-offender status or resentencing during this 10-year period. The prosecution argued that defendant had not established good cause for not raising these issues on direct appeal to this Court, and therefore, his motion for relief from judgment should be denied. The prosecution also argued that defendant's ineffective-assistance argument could not succeed because he had not incurred actual prejudice. Specifically, the sentencing transcript showed that trial counsel carefully reviewed the scoring of defendant's prior record variables (PRVs) under the applicable judicial sentencing guidelines, as well as defendant's presentence report. The prosecution also pointed out that during defendant's allocution at sentencing, when responding to queries from defense counsel, defendant did not raise any issues with the prior convictions used to enhance his sentences as a habitual offender.

With regard to his request for resentencing, the prosecution argued that this Court on direct appeal had impliedly ruled on this issue by affirming defendant's convictions and sentences in LC Nos. 06-011875-FC and 06-012819-FH, particularly because this Court rejected defendant's argument that the trial court had improperly exceeded the judicial sentencing guidelines range, noting that the judicial guidelines did not apply to habitual offenders. The prosecution also claimed that defendant "could have easily made resentencing a part of his request for relief" in his pleadings on direct appeal to this Court, or in a motion for reconsideration filed in this Court. As the prosecution pointed out, defendant injected new issues into his application for leave to appeal in the Michigan Supreme Court, and in his petitions for habeas relief in federal court, "but simply failed to do so in his direct appeal." The prosecution also argued that the policy of preserving the finality of judgments weighed in favor of rejecting defendant's collateral attacks on his sentences.

In a supplement to his motion for relief from judgment, defendant argued that the prosecution's decision to give "retrospective effect" to 1994 PA 110 amounted to a "jurisdictional defect" as contemplated by MCR 2.508(D)(3). Defendant also claimed that he had satisfied the prejudice requirement under MCR 6.508(3)(b) because if he had been informed of his right to a jury trial on his habitual-offender status, he would have chosen "trial by jury because I am innocent of the habitual offender allegations." Defendant also disputed the prosecution's claim that he had essentially admitted his prior felony convictions during trial, asserting that this was not proof beyond a reasonable doubt of his prior convictions.

The trial court denied defendant's motion for relief from judgment. Defendant now challenges that decision.

## I. HABITUAL OFFENDER ALLEGATIONS AND PRIOR CONVICTIONS

Defendant first argues that the trial court erred by denying his motion for relief from judgment on the basis of his arguments that (1) he was entitled to a jury trial on the habitual-offender allegations, and (2) resentencing in LC No. 06-011875-FC was required because the trial court relied on his convictions that were reversed by this Court in determining his sentences.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision denying a motion for relief from judgment for an abuse of discretion. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). A court abuses its discretion when its decision falls outside of the range of reasonable and principled outcomes. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). "A mere difference in judicial opinion does not establish an abuse of discretion." *Id*. The trial court's factual findings are reviewed for clear error, meaning they will be overturned only if this Court is left " 'with a definite and firm conviction that the trial court made a mistake.' " *Id*. at 565, quoting *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Under MCR 6.508(D)(3)(a) and (b), aside from jurisdictional defects, defendant cannot obtain relief on grounds that he could have raised in his direct appeal *unless* he demonstrates "good cause" for his failure to raise the grounds on direct appeal, and he incurred "actual prejudice" from the irregularities that underly his claim for relief. Accordingly, we must determine whether the trial court abused its discretion by determining that defendant did not establish good cause and did not establish that he was actually prejudiced by the alleged errors.

## B. GOOD CAUSE UNDER MCR 6.508(D)(3)(a)

In *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995) (opinion by BOYLE, J.), our Supreme Court held that " 'cause' for excusing procedural default [under MCR 6.508] is established by proving ineffective assistance of appellate counsel, under the standard set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), or by showing that some *external factor* prevented counsel from previously raising the issue." (Emphasis added.) While an appellate court's scrutiny of trial counsel's performance is to remain deferential, the defendant must establish that counsel's errors rose to the level that it can be said that counsel was not performing as the counsel guaranteed under the Sixth Amendment. *Id*. at 384. The Court also held that appellate counsel's failure to advance a claim of error on appeal "whether from 'ignorance or inadvertence rather than from a deliberate decision' " will not amount to cause to grant postconviction relief. *Id*., quoting *Murray v Carrier*, 477 US 478, 487; 106 S Ct 2639; 91 L Ed 2d 397 (1986).

In the appellate context, the *Murray* Court applied *Strickland* and ruled that "cause" for appellate default could be demonstrated only by showing ineffective assistance of counsel under *Strickland* "or by showing that some factor external to the defense precluded counsel from previously raising the issue." *Reed*, 449 Mich at 385 (opinion by BOYLE, J.). In *Reed*, the Court recognized that the purposes of MCR 6.508 are to "enhance[] the finality of judgments," "discourage repeated trips up and down the appellate ladder," and to encourage criminal defendants to raise claims of error on direct appeal as opposed to during postconviction review. *Id*. at 379, 388-389 (opinion by BOYLE, J.).

Where trial or appellate counsel's performance is constitutionally defective, procedural defaults will not bar a remedy for manifest injustice. However, the vestigial definition of "cause" contended for would transform postconviction proceedings into the "main event" of the criminal justice system, with significant cost to the entire system and to the public interest. *If a defendant received a fair trial, was represented at trial and on appeal by a constitutionally adequate lawyer, no legitimate interest is served in excusing procedural default.* [*Id.* at 385 (opinion by BOYLE, J.) (emphasis added).]

In *Reed*, the Court noted that the minimum standards do "not consider the presumption of competence inherent in the wide range of reasonable appellate assistance," and that on appeal, as at trial, the Constitution does not guarantee a defendant "a perfect process, but rather one that is not constitutionally defective." *Id.* at 388 (opinion by BOYLE, J.).

C. "ACTUAL PREJUDICE" UNDER MCR 6.508(D)(b)(*iv*)

With respect to defendant's challenge regarding the trial court's (1) failure to hold a trial on the habitual-offender allegations, and (2) consideration of convictions that were reversed in determining his sentence in LC No. 06-011875-FC, he focuses on the validity of his sentence. MCR 6.508(D)(b)(*iv*).

In *People v Whalen*, 412 Mich 166, 169; 312 NW2d 638 (1981)[5], the Court, in the context of observing the limited authority of a trial court to resentence a defendant, held that a trial court may only resentence a defendant if a sentence is invalid and held that a sentence is invalid under the following circumstances:

A court's authority to resentence depends, therefore, on whether the previously imposed sentence is invalid. Clearly a sentence beyond statutory limits is invalid. A sentence within statutory limits may also be invalid on a number of grounds. It is invalid if the sentencing court relies on constitutionally impermissible considerations, such as the defendant's constitutionally infirm prior convictions, or improperly assumes a defendant's guilt of a charge which has not yet come to trial, or the court fails to exercise its discretion because it is laboring under a misconception of the law, or conforms the sentence to a local sentencing policy rather than imposing an individualized sentence. More recently, this Court has held invalid sentences which do not comply with essential procedural requirements such as failure to utilize a "reasonably updated" presentence report or to provide the defendant and his counsel with the opportunity to address the court before sentence is imposed. [(Footnotes omitted).]

Additionally, a sentence is considered invalid "if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). More generally, this Court has held that "[a]n

---

[5] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

invalid sentence refers to any error or defect in the sentence or sentencing procedure that entitles a defendant to be resentenced or to have the sentence changed." *People v Catanzarite*, 211 Mich App 573, 583; 536 NW2d 570 (1995).

## D. RIGHT TO A JURY TRIAL ON THE HABITUAL-OFFENDER ALLEGATIONS

Defendant initially argues that the trial court erred by not holding a trial on the habitual-offender charge in LC No. 06-011875-FC. It is undisputed that defendant did not raise this issue in his direct appeal in *Payne*. Also, in his application and supplemental application for leave to appeal to the Michigan Supreme Court, defendant did not challenge the trial court's failure to conduct a jury trial on the habitual-offender allegations.

To properly analyze whether defendant (1) demonstrated "good cause" for not raising this issue in *Payne*, or in the Michigan Supreme Court, or (2) incurred "actual prejudice" in the form of an invalid sentence, it is necessary to understand the law in effect regarding habitual offenders in August 1989, when defendant committed the sexual assaults in LC No. 06-011875-FC.

## E. THE LAW BEFORE 1994

At the time defendant committed the 1989 sexual assaults in LC No. 06-011875-FC, MCL 769.13 provided, in pertinent part:

> *If after conviction and either before or after sentence it appears that a person convicted of a felony has previously been convicted of crimes as set forth in [MCL 769.10, MCL 769.11, MCL 769.12], the prosecuting attorney of the county in which the conviction was had may file a separate or supplemental information in the cause accusing the person of the previous convictions. The court in which the conviction was had shall cause the person to be brought before it and shall inform him of the allegations contained in the information, and of his right to be tried on the allegations, and require the offender to say whether he is the same person as charged in the information or not.* If the offender says he is not the same person, or remains silent, the court shall enter a plea of not guilty, and a jury of 12 jurors shall be impaneled from the petit jurors serving at the then or a following term of court to determine the issues raised by the information and plea. *The accused may waive trial by jury in the manner provided by this act.* The usual practice in the trial of criminal actions shall be followed in the impaneling of a jury and the trial of the issue. The prosecuting officer and the accused shall each be allowed 5 peremptory challenges. If the accused pleads guilty to the information or if the jury returns a verdict of guilty, the court may sentence the offender to the punishment prescribed in [MCL 769.10, MCL 769.11, or MCL 769.12], and shall vacate the previous sentence, deducting from the new sentence all time actually served on the vacated sentence if required. [(Emphasis added).]

While defendant's argument that he was entitled to a jury trial on the habitual-offender charge may seem persuasive at first glance, interpretations of the predecessor versions of MCL 769.13 confirm that the procedure set forth in MCL 769.13 was required only if the prosecution became aware,

*after conviction*, of a defendant's felony convictions that were not charged in the original information.

In *People v Hatt*, 384 Mich 302, 304; 181 NW2d 912 (1970), the defendant was charged with breaking and entering in the nighttime, and with being a second habitual offender for having committed the same crime in 1954. During trial, proof of the prior conviction was presented, and the defendant testified and admitted his guilt of the prior offense. *Id*. at 305. The Court, quoting its earlier decision in *People v Judge of Recorders Court*, 251 Mich 626, 627; 232 NW 402 (1930), acknowledged that under the predecessor version of MCL 769.13, a procedure was created "*after conviction* for the determination of a fact which the court is required to consider in imposing sentence." *Id*. at 308 (quotation marks omitted and emphasis added).

*Hatt* cited with approval this Court's decision in *People v Stratton*, 13 Mich App 350; 164 NW2d 555 (1968), in which this Court "carefully analyzed" the procedures that the prosecution followed under circumstances in which it became apparent to the prosecution *before conviction of the pending charge* that the accused had committed other felonies. *Hatt*, 384 Mich at 309. The *Hatt* Court stated that "the procedures for dealing with a recidivistic charge, as delineated by Judge Levin in [*Stratton*], are approved." *Id*.

In *Stratton*, 13 Mich App at 352, the defendant was convicted of escaping from prison, but was also charged as a second-offense habitual offender. Following his trial on the escape charge, the prosecution was permitted, over the defendant's objection, to try the habitual-offender charge before the same jury. *Id*. at 353. This Court considered whether a new jury was required on the recidivist charge. *Id*. After reviewing MCL 769.13,[6] this Court concluded that "the procedure to be followed in charging one as a prior felony offender" was set forth in MCL 769.13, and held that this "exclusive" procedure was to be followed whenever the prosecution sought to increase a defendant's penalty under the habitual-offender provisions. *Id*. at 355. On the basis of this line of reasoning, this Court, in its first opinion, held that the defendant was entitled to a new and separate jury because that is what the Court believed MCL 769.13 required. *Id*. Reviewing the statutory language of MCL 769.10, MCL 769.11, MCL 769.12, and MCL 769.13, this Court stated:

> Thus, as we now read [MCL 769.10, MCL 769.11, MCL 769.12, and MCL 769.13] they contemplate 2 separate situations and procedures to be followed when the prosecutor desires to make possible the meting out of an increased penalty pursuant to the habitual criminal sections of the code of criminal procedure. *The procedure set forth in section 13 is to be followed whenever it appears to the prosecutor 'after conviction' of the current charge that the felon has a prior felony*

---

[6] At the time *Stratton* was decided, MCL 769.13 provided:

> If at any time after conviction and either before or after sentence it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth in any of the 3 foregoing sections, the prosecuting attorney of the county in which such conviction was had, in his discretion, may file a separate or supplemental information in such cause accusing the said person of such previous convictions.

*record. However, where it appears to the prosecutor before conviction of the current charge that the accused person is a prior felon, the accused person is to be informed against as a prior offender prior to conviction on the current charge; the procedure set forth in section 13 need not be followed.* [*Id*. at 356 (emphasis added).]

See also *People v Everson*, 16 Mich App 739, 741; 168 NW2d 660 (1969) (citing *Stratton*, and rejecting the defendant's argument that the procedure in MCL 769.13 should be followed in circumstances in which the prosecution was aware of the defendant's prior felony convictions before conviction and included them in the original information).

The *Stratton* Court also noted that its decision was consistent with *In re Brazel*, 293 Mich 632, 640-641; 292 NW 664 (1940), in which the Court, in the context of a habeas proceeding, held that if habitual-offender allegations are included in the information, it is not necessary for the prosecution to file a supplemental information, given that the predecessor version of MCL 769.13 only required that a supplemental information be filed " 'if at any time after conviction and either before or after sentence' " the prosecution becomes aware of a defendant's prior felony convictions. In *In re Brazel*, 293 Mich at 637, the Court was asked to decide whether, in pursuing a habitual-offender charge against the respondent, the prosecution was required to file a supplemental information. Rejecting the respondent's contention "that it was mandatory for the prosecutor to proceed by [supplemental information]" under the predecessor version of MCL 769.13, the Court held that the prosecution could include the defendant's prior convictions in the information for the new offense "where the prosecutor has knowledge thereof on filing the information, or later in separate proceedings by a supplemental information . . . where [the prosecution] acquires such knowledge subsequent to conviction." *Id*. at 639-640. Addressing the purpose of the predecessor version of MCL 769.13, 1929 CL 17341,[7] the Court stated:

> Unquestionably the statute in question was enacted for the protection of a convicted person in the event he should be brought before the court on a supplemental information, as authorized by said section, and given the right to a trial by a jury or before the court, if he preferred, and to require the People to prove the identity of the accused as related to the former convictions. We also hold that said section was added to enable the prosecutor to file his supplemental information where he discovers such prior convictions so that a sentence might be revised to include augmented punishment prescribed by the statute for incorrigible criminals. [*Id*. at 641.]

---

[7] 1929 CL 17341 provided, in pertinent part:

> If at any time after conviction and either before or after sentence it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth in any of the three (3) foregoing sections, it shall be the duty of the prosecuting attorney of the county in which such conviction was had to file an information in such cause accusing the said person of such previous convictions.

See also *People v Hendrick*, 398 Mich 410, 417-420; 247 NW2d 840 (1976).

In a subsequent landmark decision, *People v Fountain*, 407 Mich 96, 98; 282 NW2d 168 (1979), the Court, citing both *Hatt* and *Stratton*, acknowledged that if the prosecution is aware that a defendant has a prior felony conviction, the prosecution "must promptly proceed, if at all, against the person as a habitual offender." However, the Court recognized that the prosecution may still proceed against a person as a habitual offender under MCL 769.13, provided the prosecution "is unaware of [the defendant's] prior felony record until after the conviction" on the current charge. *Id*. Notably, the Court did not disturb the prior holdings of this Court or the Supreme Court recognizing that the procedure in MCL 769.13 is only implicated when the prosecution proceeds under that statute in charging the defendant as a habitual offender. *Id*. Moreover, in *People v Morales*, 240 Mich App 571, 576-582; 618 NW2d 10 (2000), this Court, undertaking an in-depth review of caselaw interpreting MCL 769.13 before it was amended in 1994, recognized that after the Supreme Court's decision in *People v Shelton*, 412 Mich 565; 315 NW2d 537 (1982), "a two-track analysis," distinguished by the prosecution's knowledge or lack of knowledge, had developed. This Court stated:

> This approach was governed by the following rules: (1) if the prosecutor has knowledge of prior convictions, the prosecutor must act within 14 days of the defendant's arraignment (or waiver thereof) on the underlying charge, or within the time between arraignment (or waiver thereof) if the trial begins within 14 days; (2) the only exception to the first rule is when the delayed filing is due to the need to verify the out-of-state felony convictions listed on a rap sheet; (3) if the prosecutor lacks knowledge of the prior convictions until after conviction on the underlying charge, the prosecutor can file a supplemental information provided both that the filing is prompt and that the defendant is not unfairly prejudiced. [*Morales*, 240 Mich App at 582-583.]

Accordingly, while this two-track analysis developed with respect to what *actions the prosecution was required to take in proceeding against a defendant as a habitual offender and when*, the prior decisions of this Court and the Supreme Court with regard to when the procedure set forth in MCL 769.13—providing a defendant with a right to a jury trial on habitual-offender allegations—must be held, remained undisturbed.

Subsequently, as this Court recognized in *Morales*, 240 Mich App at 583, the Legislature significantly amended MCL 769.13 and the rest of the habitual-offender statutes in 1994, altering "[t]he landscape of the law" to remove from the jury the question whether a criminal defendant is a habitual offender under MCL 769.13. "Now, the issue is to be resolved by the trial court either at sentencing or at a separate hearing held postconviction on the underlying charge[,]" and the prosecution no longer carries the onus of filing a supplemental information. *Morales*, 240 Mich App at 583, citing MCL 769.13, as amended by 1994 PA 110. Section 2 of 1994 PA 110 provided that "[t]his amendatory act shall take effect May 1, 1994, and shall apply to prosecutions for criminal offenses committed on or after that date."

## F. GOOD CAUSE AND ACTUAL PREJUDICE FROM FAILURE TO RAISE THE HABITUAL-OFFENDER ISSUE ON DIRECT APPEAL

Addressing first the requirement of actual prejudice under MCR 6.508(D)(3)(b)(*iv*), while defendant claims that his sentences in LC No. 06-011875-FC are invalid because he did not receive a separate jury trial under MCL 769.13, defendant overlooks that the prosecution charged him with being a habitual offender in an amended information *before* he was convicted in LC No. 06-011875-FC. Therefore, the procedure set forth under in MCL 769.13, requiring a separate jury trial on habitual-offender allegations, was not necessary. *In re Brazel*, 293 Mich at 640-641; *Hatt*, 384 Mich at 308-309; *Morales*; 240 Mich App at 582-583; *Stratton*, 13 Mich App at 356. The amended information in LC No. 06-011875-FC notified defendant that the prosecution was proceeding against him as a habitual offender, and it listed defendant's prior armed robbery conviction in Florida in 1993, a first-degree retail fraud conviction in Kent County in 1992, and a conviction of attempted larceny in a building in Kent County in 1990. Defendant also testified extensively at trial regarding his prior convictions from 1988 in Newaygo County, Detective Michelle Clark provided additional information regarding these prior convictions, and the sentencing transcript reflects that defendant's convictions of receiving or concealing stolen property under $100 served as the basis for him being classified as a habitual offender in LC No. 06-011875-FC. Therefore, the record does not demonstrate that the prosecution, "*after* conviction and *either before or after sentence* [in LC No. 06-011875-FC]," became aware of *additional* prior convictions of defendant to the extent that it would have been necessary to file a supplemental information "accusing [defendant] of the prior convictions." MCL 769.13.[8] Thus, the facts and procedural posture of this case do not support defendant's assertion that he was entitled to a jury trial on the habitual-offender allegations. Accordingly, defendant's argument that he was prejudiced by the failure to hold a separate trial on the habitual-offender allegations is without merit.

Moreover, with regard to the good cause requirement of MCR 6.508(D)(3)(a), we conclude defendant has not demonstrated that he was denied the effective assistance of either trial or appellate counsel to the extent that failure to pursue this issue on direct appeal can be excused. To make this showing, defendant is required to demonstrate that trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the sentencing proceeding would have been different. *Reed*, 449 Mich at 390 (opinion by BOYLE, J.); *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). Because an evidentiary hearing was not held with respect to defendant's ineffective-assistance claim, this Court's review is limited to mistakes apparent from the record. *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018). Defendant bears the burden of showing that appellate counsel's "performance fell below an objective standard of reasonableness," and can be

---

[8] In a pro se Standard 4 brief, defendant asserts that the trial court did not comply with its "duty" under MCL 769.13 to inform him of the habitual-offender allegations against him, and claims that this error was an external factor that prevented him from raising issues regarding his habitual-offender status on direct appeal. However, that obligation exists only "[i]f after conviction and either before or after sentence it appears that a person convicted of a felony has previously been convicted of crimes as set forth in [MCL 769.10, MCL 769.11, or MCL 769.12]," and the prosecution files a supplemental information charging the defendant with the habitual-offender allegations. MCL 769.13.

characterized therefore as "constitutionally deficient." *Reed*, 449 Mich at 390 (opinion by BOYLE, J.).

Trial counsel reasonably could have surmised that it was not necessary to request a jury trial on the habitual-offender allegations against defendant because the case did not involve circumstances in which the prosecution became aware, *after* defendant's convictions in LC No. 06-011875-FC, that defendant had been convicted of prior offenses to the extent that a jury trial on the issue was necessary under MCL 769.13. Specifically, defendant candidly testified regarding his prior convictions, and Detective Clark confirmed the details of these convictions during her rebuttal testimony. Because the case was not one in which the prosecution was presented with information concerning defendant's prior convictions after defendant's convictions, the trial court was not required to conduct a separate jury trial to prove the convictions. See *People v Brown*, 253 Mich 537, 543-544; 235 NW 245 (1931), and *People v Morgan*, 85 Mich App 353, 357; 271 NW2d 233 (1978). Trial counsel's failure to raise an objection that would be futile does not amount to ineffective assistance of counsel. *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019). Moreover, it was not objectively unreasonable for appellate counsel to refrain from raising this issue on direct appeal in *Payne*, given that the procedure required by MCL 769.13 was not applicable.

The *Reed* Court, 449 Mich at 391 (opinion by BOYLE, J.), agreed that appellate counsel's decision to "winnow out" weak arguments that are not likely to be successful does not amount to ineffective assistance of counsel. Accordingly, given defendant's failure to establish "actual prejudice" as contemplated by MCR 6.508(D)(3)(b)(*iv*), or "good cause" for not raising this ground of error on direct appeal in *Payne*, MCR 6.508(D)(3)(a), the trial court did not abuse its discretion by denying defendant's motion for relief from judgment with respect to his argument concerning the necessity of a jury trial on the habitual-offender allegations.

## II. ADDITIONAL ARGUMENTS

In his Standard 4 brief, defendant argues that the trial court erroneously applied 1994 PA 110 retrospectively in LC No. 06-011875-FC, contrary to the Ex Post Facto Clause. Defendant did not raise this issue in his application for leave to appeal, and this Court granted defendant's application "limited to the issues raised in the application." *People v Payne*, unpublished order of the Court of Appeals, entered March 8, 2019 (Docket No. 345734). Accordingly, this issue is not properly before this Court. *O'Connor v Consumer & Indus Servs*, 236 Mich App 665, 673; 601 NW2d 168 (1999), rev'd on other grounds 463 Mich 864 (2000); MCR 7.205(E)(4). In any event, the argument is without merit because the trial court *did not* retroactively apply 1994 PA 110. Rather, as previously explained, the trial court was not required to hold a trial on defendant's habitual-offender allegations because the fact of his prior convictions was made known *before* defendant was convicted.

Defendant also argues in his Standard 4 brief that "by giving retrospective effect to the effective date of 1994 PA 110," he was effectively charged under the amended statute, which essentially amounts to a "jurisdictional defect" that excuses the required showing of "good cause" and "actual prejudice" under MCR 6.508(D)(3). In *People v Carpentier*, 446 Mich 19, 28-30; 521 NW2d 195 (1994), our Supreme Court, relying on *Custis v United States*, 511 US 485; 114 S Ct 1732; 128 L Ed 2d 517 (1994), held that violation of the Sixth Amendment right to counsel is a

"jurisdictional defect that may be collaterally challenged by a convicted criminal defendant." Defendant argues that proceeding under an incorrect statute with respect to the habitual-offender allegations likewise amounts to a "jurisdictional defect."

In support of his argument, defendant cites *People v New*, 427 Mich 482, 485; 398 NW2d 358 (1986), in which the Supreme Court held that defendants who pleaded guilty or nolo contendre waived their right to challenge the denial of a motion to suppress evidence, or to quash the information on the basis of insufficient evidence at the preliminary examination. Citing *People v White*, 411 Mich 366, 397-399; 308 NW2d 128 (1981) (MOODY, J. concurring and dissenting in part), the Court held that once a criminal defendant has pleaded guilty, he may only challenge the denial of rights and defenses that implicate the state's very right to proceed against him, including the right to challenge a charge brought under an inapplicable statute. *New*, 427 Mich at 491. In this case, defendant argues that the prosecution proceeded under an inapplicable statute because it proceeded under MCL 769.13, as amended by 1994 PA 110. As already explained, however, the record does not support this contention. Moreover, MCL 769.13 was not even implicated because the prosecution did not proceed on habitual-offender allegations that it learned about after defendant's convictions, Accordingly, there is no merit to this argument.

Defendant also argues in his Standard 4 brief that trial counsel's failure to advise him of his right to a jury trial on the habitual-offender charge was an "external factor" that prevented him from raising the issue on direct appeal.[9] In *Reed*, 449 Mich at 378 (opinion by BOYLE, J.), our Supreme Court acknowledged that "cause" to allow a defendant's procedural default in not raising an issue on direct appeal can be demonstrated by the ineffective assistance of appellate counsel, "or by showing that some external factor prevented counsel from previously raising the issue." Defendant also claims that he was not able to raise this issue *in propria persona* because he was incarcerated in a federal prison in Kentucky, and did not have access to Michigan appellate caselaw. In *Reed*, our Supreme Court noted that examples of such external factors include circumstances in which the legal or factual basis of a claim was not available to counsel in a reasonable manner, or when "official" interference precluded counsel from raising an issue. *Id*. at 385 n 8 (opinion by BOYLE, J.).

Defendant's contention that his confinement in federal prison in Kentucky limited his ability to raise relevant issues challenging his sentence on direct appeal is not persuasive. Even crediting defendant's assertion that he was incarcerated in Kentucky when his Standard 4 brief was filed, and that he informed appellate counsel that he did not have access to Michigan law, there were steps defendant could have taken to make sure appropriate issues were raised on direct appeal. For example, defendant could have filed a motion informing this Court of the problem, and sought an extension of time to file his brief on that basis. Moreover, if defendant felt that appointed appellate counsel was not taking his concerns about lack of access to Michigan law seriously, he could have filed a motion for appointment of new counsel.

---

[9] Defendant makes this same argument with respect to the use of his convictions in LC Nos. 06-011607-FC and 06-011944-FC.

Notably, defendant cites no legal authority in support of his position that his alleged lack of access to Michigan law excused his failure to raise the issue concerning his habitual-offender allegations on direct appeal. We note, however, that a prisoner's lack of access to legal materials may amount to an objective external factor that could excuse a defendant's failure to follow necessary procedural rules on direct appeal in a state appellate court. See, e.g., *Watson v New Mexico*, 45 F3d 385, 387-388 (CA 10, 1995).[10] In contrast, in *Malone v Vasquez*, 138 F3d 711, 719 (CA 8, 1998), the court rejected the defendant's claim that being housed in a California prison inhibited his ability to comply with procedural rules for filing postconviction proceedings in Missouri, observing that while "being incarcerated in California may have made filing [the defendant's] petition in Missouri slightly more cumbersome," the defendant did not establish state interference that interfered with his ability to file his petition for postconviction relief. Similar to *Malone*, while defendant's incarceration in Kentucky may have complicated and made more challenging his ability to pursue postconviction relief in Michigan, defendant has not demonstrated that his access to this Court was in some manner inhibited, particularly when he could have availed himself of other opportunities to receive assistance with this issue. Accordingly, defendant has not demonstrated an external factor that prohibited him from raising the issue regarding his habitual-offender allegations on direct appeal.

Defendant next argues that the trial court abused its discretion by denying his motion for relief from judgment on the basis that the trial court relied on defendant's contemporaneous convictions, subsequently reversed by this Court, in formulating defendant's sentences in LC No. 06-011875-FC.[11]

When scoring the judicial sentencing guidelines for his convictions in LC No. 06-011875-FC, the trial court assessed 20 points for PRV 7 because defendant had "two or more subsequent or concurrent convictions," those being his convictions in LC Nos. 06-011607-FC and 06-011944-FC. Defendant frames his argument as a challenge to the accuracy of the information that the trial court relied on to determine an appropriate sentence. Due process precludes a trial court from considering "false information" regarding a defendant's criminal record in sentencing. *People v Eason*, 435 Mich 228, 239 n 18; 458 NW2d 17 (1990), quoting *Townsend v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 2d 1690 (1948). However, because this appeal arises from postconviction proceedings in the trial court, rather than defendant's direct appeal challenging the trial court's life sentence for CSC-I in LC No. 06-011875-FC, defendant is now, almost 11 years after this Court decided *Payne*, mounting a collateral attack of the use of the convictions for sentencing.

Our Supreme Court has defined a collateral attack on a conviction as one made in a proceeding other than on direct appeal from the convictions at issue. See *People v Roseberry*, 465 Mich 713, 716; 641 NW2d 558 (2002). In *Carpentier*, 446 Mich at 25, the defendant brought a motion for relief from judgment to collaterally challenge the length of his sentence for armed

---

[10] "Cases from other jurisdictions are not binding precedent, but we may consider them to the extent this Court finds their legal reasoning persuasive." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 147 n 5; 871 NW2d 530 (2015).

[11] Defendant only challenges his sentences in LC No. 06-011875-FC.

robbery, arguing that resentencing was necessary because the trial court considered "constitutionally infirm" juvenile adjudications to determine his sentence because he was not represented by counsel in the juvenile proceedings. The Supreme Court agreed with this Court that a violation of *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963),[12] at prior juvenile proceedings "established a jurisdictional defect." *Carpentier*, 446 Mich at 28. Citing *Custis*, 511 US 485, our Supreme Court elaborated:

> In *Custis*, the Court held that, as a matter of federal law, a criminal defendant possesses the constitutional right to collaterally challenge a prior conviction that is used to enhance a sentence when that defendant alleges that the prior conviction was procured in violation of the Sixth Amendment right to counsel. Reviewing its history of permitting habeas corpus collateral challenges based on alleged right to counsel violations, the Court explained that it had long "attributed a jurisdictional significance to the failure to appoint counsel," and reiterated that this alleged Sixth Amendment violation constituted such a jurisdictional defect[.] [*Carpentier*, 446 Mich at 28.]

In *Carpentier*, however, the Court cautioned that *Custis* had "expressly limited the availability of collateral challenges" to alleged *Gideon* violations implicating the right to counsel protected by the Sixth Amendment, and *Custis* therefore "refused to extend the opportunity for [similar] relief to other alleged constitutional infirmities," in part because of the importance of "promoting the finality of judgments for other non-*Gideon* challenges." *Id*. at 29. Acknowledging that the reasoning in *Custis* was both "persuasive and consistent with Michigan common law," *id*., the Court held, in pertinent part:

> Like the federal courts, both the Michigan judiciary singularly, and the citizenry whose collective rights and protections it is obligated to protect, have a compelling interest in championing the finality of criminal judgments. However, and again like the federal courts, Michigan has recognized the unique import of a defendant's constitutional right to counsel. See, e.g., *People v Ingram*, 439 Mich 288; 484 NW2d 241 (1992); *People v Crawford*, 417 Mich 607, 614; 339 NW2d 630 (1983) (BRICKLEY, J., concurring). The exceptional nature of this constitutional protection counsels for similarly atypical protection. For this reason, we align ourselves with the rationale and result of *Custis* and hold that an alleged *Gideon* violation constitutes a jurisdictional defect that may be collaterally challenged by a convicted criminal defendant. [*Id*. at 30.]

In *Custis*, the United States Supreme Court declined to "extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon*." *Custis*, 511 US at 496. In so ruling, the Court considered its prior decisions in *Johnson v Zerbst*, 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938), *Burgett v Texas*, 389 US 109; 88 S Ct 258; 19 L Ed 2d 319 (1967), and *United States v Tucker*, 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972), pointing out that the common thread of these decisions was "that

---

[12] *Gideon*, 372 US at 342, 344, recognized a criminal defendant's right to counsel under the Sixth Amendment, applicable to the states under the Fourteenth Amendment.

failure to appoint counsel for an indigent defendant was a unique constitutional defect." *Custis*, 511 US at 493-497. See also *Sunal v Large*, 332 US 174, 178; 67 S Ct 1588; 91 L Ed 1982 (1947).

Michigan Supreme Court decisions predating *Carpentier* are consistent with this authority. For example, in *Crawford*, 417 Mich at 610-611, the defendant sought to collaterally attack a conviction charged in an amended supplemental information on the basis that it had been obtained under a guilty plea that was invalid under *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972). The defendant pleaded guilty of forgery pursuant to a plea agreement whereby another charge was dismissed, and he was allowed to plead guilty to a reduced charge of being a second habitual offender. *Crawford*, 417 Mich at 609-610. Because the defendant had already pleaded guilty and had not moved to quash the supplemental information claiming that the underlying conviction was defective, and given that the record did not suggest that the prosecution was aware that the prior conviction was deficient or subject to challenge, the Supreme Court held that the defendant could not "properly complain" that he would not have pleaded guilty or worked out a better resolution for himself if his legal position attacking the prior conviction in the supplemental information had been successful. *Id*. at 613. Specifically, the Court held:

> A conviction defective under *Jaworski* can be challenged by a timely motion by the defendant to quash the supplemental information or to strike from the supplemental information the defective conviction. To be timely, such a motion must be made before a defendant's plea of guilty or nolo contendere is accepted. [*Id*. at 613-614.]

However, in *Ingram*, 439 Mich at 291, the Supreme Court, in the context of deciding whether the failure of a plea-taking court to follow the requirements of accepting a guilty plea allowed the defendant to collaterally attack the resulting conviction, emphasized the importance "of the interests of finality and . . . administrative consequences" in the context of collateral attacks on convictions. The Court ultimately held that the "failure of a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding does not provide a defendant the opportunity to challenge by collateral attack." *Id*. at 294-295. Adopting the concurring opinion of Justice BRICKLEY in *Crawford*, the Court held that only prior convictions obtained in violation of *Gideon* should be permitted to be collaterally attacked. *Ingram*, 439 Mich at 296. The Court also emphasized that it was necessary to promote a policy "which provides incentive for raising claims on direct review." *Id*. at 301.

Although *People v Jackson*, 487 Mich 783; 790 NW2d 340 (2010), appears to support defendant's argument, that case is procedurally distinguishable from the instant case. In *Jackson*, the defendant was convicted of armed robbery and two counts of felonious assault. *Id*. at 787. The trial court sentenced him under the legislative sentencing guidelines for robbery, and assessed 20 points for PRV 7 for the two felonious assault convictions. *Id*. While the guidelines called for a minimum sentence range of 108 to 270 months, if the defendant had not been assessed 20 points for PRV 7, his guidelines range would have been 81 to 202 months. *Id*. at 787-788. The defendant was sentenced as a third-offense habitual offender to concurrent prison terms of 108 to 240 months for the armed robbery conviction, and 24 to 96 months for each felonious assault conviction. *Id*. at 788. This Court vacated the defendant's convictions of felonious assault, but rejected the

defendant's request for resentencing on the armed robbery conviction. *Id*. at 788-789. This Court held that under MCL 769.34(10),[13] it was required to affirm the defendant's sentence. *Id*.

The Supreme Court held that because the trial court's sentence for the armed robbery conviction was based on inaccurate information, given the assessment of 20 points under PRV 7 for convictions that had been vacated, the defendant was entitled to resentencing. *Id*. at 792-795. The Court noted that in his appeal requesting that the felonious assault convictions be vacated, the defendant also requested resentencing and had complied with the requirement in MCL 769.34(10) that a request for resentencing be made in a proper motion filed in this Court. *Id*. at 796-798. The Court observed that any request for relief in the trial court for resentencing as required under MCL 769.34(10) "would have been futile until such time as the Court of Appeals affirmed or reversed the felonious assault convictions." *Id*. at 796. The Court also recognized that a motion to remand for resentencing under MCR 7.211(C)(1) was not "ripe for remand to the trial court" until this Court completed its review of the case. *Id*. at 798. The Court ultimately held that the purpose of requiring that "a proper motion to remand" be filed in this Court was served by the defendant's request for resentencing in his brief on appeal. *Id*. at 799, 801.

*Jackson* is procedurally distinguishable from defendant's case, given that *Jackson* involved a direct appeal from the defendant's convictions and sentences. Moreover, the Court's decision in *Jackson* was influenced by its interpretation of MCL 769.34(10), which is part of the legislative sentencing guidelines, a statute that is not applicable to the judicial sentencing guidelines. Another important distinction from *Jackson* is that the defendant in that case, on direct appeal, expressly requested resentencing while challenging the underlying convictions. Defendant does not dispute that he did not do so in his direct appeal.

In sum, the reasoning of the Michigan Supreme Court in *Carpentier*, adopting the analysis in *Custis*, makes it clear that a criminal defendant's ability to collaterally attack the validity of prior convictions that were used in sentencing is limited to situations where the defendant asserts that the protections provided by *Gideon* were not provided. Additionally, in *Sunal*, 332 US at 178, the Supreme Court, even in a case in which the defendants claimed that they were denied the fundamental right to present a defense at trial, reasoned that a defendant's ability to collaterally attack a prior conviction remains limited, and a defendant is expected to follow appropriate appellate procedures. Accordingly, defendant's attempt here, almost 11 years following this Court's decision in his direct appeal, to mount a collateral attack on his convictions in LC Nos. 06-011607-FC and 06-011944-FC in an effort to seek resentencing should not be permitted, particularly because defendant has not established good cause or actual prejudice under MCR 6.508.

With regard to the requirement of "good cause," MCR 6.508(D)(3)(a), defendant has not demonstrated why, when challenging his convictions and sentences in LC Nos. 06-011607-FC and 06-011944-FC, he did not argue that (1) his remaining sentences were tainted by the overturned convictions, and (2) request that this Court remand for resentencing on his remaining valid convictions. Additionally, defendant could have filed a motion for reconsideration in this Court,

---

[13] MCL 769.34 was not in effect at the time that defendant committed his crimes in LC No. 06-011875-FH.

MCR 7.215(I), or pursued the issue in his application for leave to appeal to the Michigan Supreme Court, which he did not do.

While faulting appellate counsel for not pursuing this issue on direct appeal, defendant has not established that appellate counsel's performance fell below an objective standard of reasonableness or was constitutionally deficient. *Reed*, 449 Mich at 390 (opinion by BOYLE, J.). As an initial matter, appellate counsel may have surmised that any challenge to defendant's sentences in LC No. 011875-FC on the basis of the trial court's reliance on the contemporaneous convictions in LC Nos. 06-011607-FC and 06-011944-FC in scoring PRV 7 of the judicial sentencing guidelines would not have been successful, given that the judicial guidelines did not even apply to habitual offenders. *Payne*, 285 Mich App at 192. Moreover, appellate counsel likely recognized that this Court had clearly indicated that its reversal of defendant's convictions in LC Nos. 06-011607-FC and 06-011944-FC did not bar defendant's prosecution in those cases, given that this Court specifically stated that "the prosecution may retry defendant on these charges if it so chooses." *Id.* at 201. Appellate counsel may not have otherwise pursued this potential sentencing issue by filing a motion for reconsideration with this Court because he was unsure if the prosecutor intended to again prosecute. In correspondence from appellate counsel, dated July 29, 2009, counsel informed defendant that he had communicated with the Chief Prosecutor for Kent County following the issuance of this Court's decision in *Payne*, and the prosecutor had not decided how it was going to proceed with defendant's case.

Turning to the requirement of "actual prejudice," even setting aside our conclusion that defendant should not, in postconviction proceedings almost 11 years after this Court reversed his convictions in LC Nos. 06-011607-FC and 06-011944-FC, be permitted to collaterally attack the validity of the convictions used to formulate his life sentence, defendant has not established that he received an invalid sentence. MCR 6.508(D)(3)(b)(*iv*). We reach this conclusion because even if the trial court were to have relied on defendant's convictions in LC Nos. 06-011607-FC and 06-011944-FC in assessing 20 points under PRV 7 of the judicial guidelines, the judicial guidelines were not binding on trial courts, which were free to depart from the guidelines as long as they stated reasons for doing so to facilitate appellate review. *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). Additionally, the judicial guidelines did not apply to habitual offenders. *People v Cervantes*, 448 Mich 620, 625; 532 NW2d 831 (1995); *People v Strickland*, 181 Mich App 344, 346; 448 NW2d 848 (1989).

Defendant also presents a cursory, one-sentence argument that his "sentence was also disproportionate and violated the principle of proportionality in sentencing." Defendant did not raise this issue in his application for leave to appeal, and this Court's review is limited to issues raised in the application. *O'Connor*, 236 Mich at 673; MCR 7.205(E)(4). Defendant also does not elaborate on this argument, or even specify which sentence in LC No. 06-011875-FC he alleges is disproportionate. Therefore, this issue is not properly before this Court, and we decline to address it.

## III. REFUSAL TO ADMIT GUILT

Defendant argues that he is entitled to relief from his sentences in LC Nos. 06-011875-FC and 06-012819-FH because the trial court impermissibly considered his refusal to admit guilt when sentencing him. Preliminarily, defendant did not raise this issue in his application for leave to

appeal. Because this Court granted leave limited to the issues raised in defendant's application, this issue is not properly before this Court. MCR 7.205(E)(4). Regardless, this Court previously rejected this same argument in defendant's direct appeal in *Payne*, 285 Mich at 193-194. This Court's prior decision on this issue is the law of the case, and may not be decided differently in this appeal. *Johnson v White*, 430 Mich 47, 52-53; 420 NW2d 87 (1988).

## IV. JUDICIAL BIAS

Defendant also argues that this Court should remand for resentencing before a different judge because the trial court judge is biased against him. Because we have concluded that defendant is not entitled to resentencing, this issue is moot. In any event, there was no basis for concluding that the trial court was biased against defendant or pierced the veil of judicial impartiality. *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015).

Affirmed.


/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Jane E. Markey